**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **THOMAS FLANNERY** | : | |
| | : | |
| **v.** | : | **C.A. No. 06-399S** |
| | : | |
| **DR. BAUMEISTER; JOSEPH MAROCCO;** | : | |
| **MICHAEL PARKIS;and A. T. WALL** | : | |

**JOINT MOTION of**
**DEFENDANT MICHAEL PARKIS [*sic*] and DEFENDANT DR. BAUMEISTER [sic]**
**IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Now come defendants Michael Parkis [*sic*] [Michael Poshkus, M.D.] and Dr. Baumeister [*sic*] [Martin Bauermeister, M.D.] and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby move this Honorable Court for entry of Summary Judgment in their favor. These defendants submit the attached Joint Memorandum of Law and accompanying exhibits, as well as a Statement of Undisputed Facts, in support of this Motion

**Defendant,**
**Michael Parkis [*sic*] [Michael Poshkus, M.D.]**

By his Attorneys,
RATCLIFFE BURKE HARTEN & ELIAS, LLP

/s/ Jay M Elias

Jay M. Elias, Esquire (#3050)
1600 Financial Plaza
Providence, RI 02903
401.331.3400
401.331.3440 [Fax]

**Defendant,**
**Dr. Baumeister [*sic*] [Martin Bauermeister,M.D.]**

By his Attorneys,
ROBERTS CARROLL FELDSTEIN & PEIRCE

/s/ John b. Moretta

John B. Moretta, Esquire (#6984)
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street, 8th Floor
Providence, RI 02903
401.521.7000
401.521.1328 [Fax]

**CERTIFICATION**

I hereby certify that a true copy of this Memorandum of Law was mailed, postage prepaid, on the 1st day of August 2007, to the following:

***Legal Mail/Confidential***
Mr. Thomas Flannery, #W-86388
MCI Shirley
P. O Box 1218
Shirley, MA 01464

/s/ Jay M. Elias

I hereby certify that on this 1st day of August 2007, the within document was filed electronically through the ECF System, where it is available for viewing and downloading and will be sent electronically to the counsel of record listed below who are registered participants identified on the Notice of Electronic Filing:

Michael B. Grant, Esquire
Department of Corrections
40 Howard Avenue
Cranston, RI 02920

John B Moretta, Esquire
Roberts, Carroll, Feldstein & Peirce, Inc
10 Weybosset Street, 8th Floor
Providence, RI 02903

/s/ Jay M. Elias

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **THOMAS FLANNERY** | : | |
| | : | |
| **v.** | : | **C.A. No. 06-399S** |
| | : | |
| **DR. BAUMEISTER; JOSEPH MAROCCO;** | : | |
| **MICHAEL PARKIS;and A. T. WALL** | : | |

**JOINT MEMORANDUM OF LAW of**
**DEFENDANT MICHAEL PARKIS [*sic*] and DR. BAUMEISTER [sic]**
**IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Now come the Defendants Michael Parkis [*sic*] and Dr. Baumeister [*sic*] and hereby file this Memorandum of Law in support of the Defendants' Motion for Summary Judgment. While Defendants are listed as "Michael Parkis" and "Dr. Baumeister" in the caption of Plaintiff's Amended Complaint, it should be noted at this time that the correct names of the Defendants filing this Motion and the supporting Memorandum of Law are Michael Poshkus, M.D. and Martin Bauermeister, M.D.

Dr. Poshkus presently serves as the Medical Program Director at the Adult Correctional Institution in Cranston and Dr. Bauermeister provides psychiatric services to the Rhode Island Department of Corrections ("RIDOC") and the Adult Correctional Institution ("ACI") in Cranston.

At this time, Dr. Poshkus and Dr. Bauermiester request that Summary Judgment enter in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. This request is based on

the undisputed fact that Plaintiff has failed to disclose any expert witnesses required to prove and support his claims in this matter. Further, these defendants submit that Plaintiff has failed to set forth any facts through the discovery process, which could support a finding in Plaintiff's favor at trial regarding the allegations set forth in Plaintiff's Amended Complaint. Thus, at this time, Defendants Poshkus and Bauermeister bring this Motion and submit this supporting Memorandum of Law inasmuch as there are no genuine issues of material fact in dispute and, accordingly, submit that they are entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II. CASE BACKGROUND

*Pro se* Plaintiff, Thomas Flannery, brought the instant lawsuit against several individuals associated with the RIDOC and the ACI At its essence, the case involves claims by Mr. Flannery that he was not provided with prescriptions for certain medications which had apparently been prescribed to him by previous treating physicians while the plaintiff was incarcerated at other out-of-state correctional facilities. *See* Exhibit A, Plaintiff's Amended Complaint. Mr Flannery alleges he was not prescribed the medications *Klonopin*, *Remeron*, or *Motrin* during the brief period of incarceration at the ACI between January and April 2006 *Id.* Essentially, Mr. Flannery asserts that the care and treatment he was provided at the ACI was in violation of the Eighth Amendment to the U.S. Constitution (cruel and unusual punishment). *Id.*

In accordance with Local Rule 56(a) (1) and (2) of the United States District Court of Rhode Island, Defendants are submitting a Statement of Undisputed Facts, which is incorporated herein by reference.

## III. STANDARD OF REVIEW

Summary Judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). According to Fed. R. Civ. P. 56(e):

> [W]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . .

Rather, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986). [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Id. at 250, 106 S.Ct. at 2511. Accordingly, [i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (*quoting* Anderson *477* U.S. at 249-50 (1986))

Defendants also note that due to the fact that Plaintiff's ambiguous claims fail to allege facts sufficient to support either claim, they have each filed Motions to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## IV. ARGUMENT AND ANALYSIS

While Plaintiff does not set forth separate counts in his Amended Complaint, it appears Plaintiff is setting forth allegations which claim that the Defendants violated his Eighth Amendment rights by providing inadequate medical care. Thus, the analysis set forth below analyzes both the constitutional and medical negligence issues.

## A. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EIGHTH AMENDMENT CLAIMS

Plaintiff Thomas Flannery's pleadings allege inadequate medical care, *to wit*, the alleged failure to prescribe certain medications as described in Defendants' Statement of Undisputed Facts. Plaintiff contends these alleged acts or omissions also constituted cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution.

When an inmate complains of inadequate medical treatment, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976). Officials must intentionally delay or completely deny access to medical care. *Id.* at `04-05. Deliberate indifference to an inmate's medical needs requires a two part inquiry. First, the court must ask whether the inmate's medical needs are objectively serious (objective prong). Second, the court must ask whether the defendants had the necessary intent, akin to criminal recklessness (subjective prong). Only when both prongs are met, can the defendants be held accountable for an Eighth Amendment violation.

Deliberate indifference to the medical needs of an inmate amounts to an Eighth Amendment violation only when the needs of the inmate are serious. Hudson v. McMillian, 503 U.S. 1, 9, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992). A serious medical need is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Mahan v. Plymouth County House of Corrections, 64 F.3d 14 (1st Cir. 1995). Further, deliberate indifference requires a state of mind akin to criminal recklessness; that the official knew of and consciously disregarded a substantial risk of serious harm. See Farmer v. Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811,

114 S. Ct. 1970 (1994) Defendants submit that, for the reasons stated below, plaintiff's claims under the Eighth Amendment must fail.

### 1. <u>**Plaintiff Has Failed to Allege Facts Sufficient To Establish and Prevail on An Eighth Amendment Claim Resulting From Defendants Alleged Failure To Prescribe the Medications He Requested**</u>

Plaintiff has offered absolutely no evidence to support his vague assertions that the medical care and treatment provided to him were in contravention to the applicable standards of care In fact, Plaintiff's Answers to the Interrogatories propounded by both Dr. Bauermeister and Dr. Poshkus are devoid of any allegations or facts sufficient to establish that the care provided in this matter constituted cruel and unusual punishment or medical negligence. Plaintiff's answers to the interrogatories propounded by both Dr. Bauermeister and Poshkus are attached hereto as Exhibits B and C, respectively. Because Mr. Flannery can provide no evidence to substantiate the allegations made in his pleadings (which allegations are essential to his claims of both a failure to provide proper care and treatment and his claims of cruel and unusual punishment), defendants Dr. Poshkus and Dr. Bauermeister request Summary Judgment in their favor.

Even if this Court were to *assume* that the medical decisions of the plaintiff's treating providers amounted to cruel and unusual punishment or deliberate indifference, and that there was some delay caused solely by any one or combination of the named defendants, Plaintiff must <u>still</u> meet both prongs of the Eighth Amendment's deliberate indifference test. Plaintiff must offer evidence that the Defendants have consciously disregarded a substantial risk of serious harm to his health resulting from the failure to prescribe the medications he sought; he has failed to do so here. Further, Plaintiff has failed to provide any evidence to support such an allegation,

even if it were presumed to have been made.[1] Even if this Court were to assume that a serious medical need was present, in addition to satisfying the *objective* prong, Mr. Flannery must also set forth evidence which demonstrates the *subjective* prong; that is, these defendants knew of and consciously disregarded a substantial risk of serious harm. *Farmer*, 511 U.S. at 837. Here, there is no allegation that <u>any</u> of the defendants knew of and disregarded a substantial risk of serious harm to Mr. Flannery when he was an inmate at the ACI.

In order to state a cognizable claim, a prisoner must allege acts or omissions *sufficiently harmful* to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency' in violation of the Eighth Amendment. <u>Estelle</u>, 429 U.S. at106 (U.S. 1976) (Emphasis added).

Plaintiff has failed to allege or otherwise offer any facts creating a genuine issue that the decision of Dr. Bauermeister to prescribe medications different than those requested by Mr Flannery was tantamount to a deliberate indifference or rose to the level of cruel and unusual punishment. Plaintiff has similarly failed to make any such allegation against Dr Poshkus. Accordingly, it is respectfully submitted that Summary Judgment properly should be granted for this reason.

Plaintiff has also failed to offer any expert testimony that the medications he sought would have benefited him more than the medications prescribed by Dr. Bauermeister. Plaintiff was provided full access to healthcare and mental healthcare during his brief period of incarceration at the ACI. Similarly, Plaintiff was provided ample opportunity to demonstrate either the need for different medications or the ineffectiveness of the medications prescribed by

---

[1] [A]n inmate who complains that delay in medical treatment rose to a constitutional violation *must* place verifying medical evidence in the record to establish the *detrimental effect* of the delay .... <u>Napier v. Madison County, Kentucky</u>, 238 F.3d. 739, 742 (6th Cir. 2001)(emphasis added). <u>*See* also</u> <u>Mill v. Dekalb Regional Youth Detention Center</u>, 40 F.3d 1176, 1188 (11th Cir 1994)

Dr. Bauermeister. He was instructed to notify the nursing staff when he believed he was experiencing either a panic or anxiety attack, yet not once did he do so. Absent a *serious* risk of harm, Plaintiff cannot meet his burden of proving that Defendants' failure to prescribe the medications he sought constituted a deliberate indifference or cruel and unusual punishment in violation of the Eighth Amendment.

## B. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S MEDICAL NEGLIGENCE CLAIMS

Plaintiff asserts various duties that the defendants have under the Eighth and Fourteenth Amendments. A review of Plaintiff's Amended Complaint reveals that the factual allegations giving rise to this lawsuit are based on Mr. Flannery's desire to have been prescribed certain medications: *Klonopin*, *Remeron*, and *Motrin*. These allegations clearly sound in medical negligence.

To establish the standard of care in a medical negligence claim, expert testimony is mandated unless clearly obvious to a lay person. See Sheeley v. Memorial Hospital, 710 A.2d 161 (R.I. 1998) (expert testimony is essential requirement to prove standard of care); Sousa v. Chaset, 519 A.2d 1132 (R.I. 1987) (departure from standard of care requires expert testimony unless clearly obvious to lay person). The expert must measure the care that was administered against the degree of care and skill ordinarily employed in like cases by physicians in good standing engaged in the same type of practice in similar localities. Richardson v. Fuchs, 523 A.2d 445, 448 (R.I., 1987) (citations omitted). The expert must explain what proper procedures and alternatives are available to a physician [and] why the procedures followed by the defendant physician were negligent, and not legitimate, alternatives. Sousa v. Chaset, 519 A.2d 1132, 1135 (R.I. 1987)

The applicable standard of review requires expert testimony as to the standard of care for healthcare providers under similar circumstances in the same type of practice. Richardson, 523 A.2d at 448. Here, this requires expert testimony as to the standard of care of prison medical personnel who are faced with vastly different patients under vastly different circumstances than a general practitioner. See DesRosiers v. Moran, 949 F.2d 15, 19 (when evaluating the quality of medical care in an institutional setting, courts must fairly weigh the practical constraints facing prison officials)

Plaintiff has failed to disclose a single expert witness upon whom he intends to rely in support of his allegations of medical negligence. Similarly, Plaintiff has failed to timely identify a single expert witness who will testify as to the standard of care applicable to the various issues which have been alleged. Pursuant to an Order of this Court, issued by Magistrate Judge Hagopian, expert disclosures were to be made by the parties by July 26, 2007 These Defendants timely submitted their expert disclosures, as required by the Court; however, Mr. Flannery has failed to do so. *See* Exhibit D, Defendants' Expert Reports and Disclosures. In fact, Plaintiff has presented absolutely no evidence as to the standard of care in Rhode Island as a whole, let alone evidence as to the standard of care in the correctional setting. It is clear Plaintiff had no intention of providing any expert testimony. In response to both of the Defendants' interrogatories asking for the names of expert witnesses whom Plaintiff intends to introduce at trial, Plaintiff responded "**none**." *See* Exhibit B at Interrogatory Numbered 22

Further, none of the allegations present claims of malpractice that would be obvious to a layman.[2] Thus, because Plaintiff has offered no expert evidence on the standards of care from

---

[2] That is, a layman would not be able to determine the appropriateness of prescribing the medications sought by Mr., Flannery or the medications, treatment, or plan of care ordered by Dr Bauermeister, and, from that, know what the available treatment for plaintiff's complaints would be and which treatments are considered to be consistent with the applicable medical standards of care; a layman would not know when one medication as opposed to another, would be appropriate, indicated, or required.

which he claims the Defendants deviated, Summary Judgment properly should be granted in favor of Dr. Poshkus and Dr. Bauermeister as to Plaintiff's medical negligence claims.

## V. CONCLUSION

For the foregoing reasons, Defendants Michael Parkis [*sic*] and Dr. Baumeister [*sic*] respectfully submit that there are no genuine issues of material fact supporting Plaintiff's claims against them. Therefore, these Defendants respectfully move this Honorable Court to grant Summary Judgment in their favor.

**Defendant,**
**Michael Parkis [*sic*] [Michael Poshkus, M.D.]**

By his Attorneys,
RATCLIFFE BURKE HARTEN & ELIAS, LLP

/s/ Jay M. Elias

Jay M. Elias, Esquire (#3050)
1600 Financial Plaza
Providence, RI 02903
401.331.3400
401.331.3440 [Fax]

**Defendant,**
**Dr. Baumeister [*sic*] [Martin Bauermeister,M.D.]**

By his Attorneys,
ROBERTS CARROLL FELDSTEIN & PEIRCE

/s/ John B. Moretta

John B. Moretta, Esquire (# 6984)
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street, 8th Floor
Providence, RI 02903
401.521.7000
401.521.1328 [Fax]

**CERTIFICATION**

I hereby certify that a true copy of this Memorandum of Law was mailed, postage prepaid, on the 1st day of August 2007, to the following:

***Legal Mail/Confidential***
Mr. Thomas Flannery, #W-86388
MCI Shirley
P. O. Box 1218
Shirley, MA 01464

/s/ Jay M. Elias

I hereby certify that on this 1st day of August 2007, the within document was filed electronically through the ECF System, where it is available for viewing and downloading and will be sent electronically to the counsel of record listed below who are registered participants identified on the Notice of Electronic Filing:

Michael B. Grant, Esquire
40 Howard Avenue
Cranston, RI 02920

John B. Moretta, Esquire
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street, 8th Floor
Providence, RI 02903

/s/ Jay M. Elias

*Joint Memorandum Summary Judgment 08 01 07*

# EXHIBIT A

RECEIVED
APR 02 2007
Property of U.S. District Court
District of Rhode Island

UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

THOMAS FLANNERY )
Plaintiff )
v. ) CIVIL ACTION NO. 06-399S
DR. BAUMEISTER et al[1] )
Defendants )

AMENDED COMPLAINT

This is complaint arising from the negligent actions of state actors whose indifference to a prisoner's health and well-being contributed and constituted cruel and unusual punishment, which neglect was deliberate when defendants and their subordinates knew or should have known that such conduct violated plaintiff's constitutional rights entitled him while in the custody of prison officials.

JURISDICTION

Jurisdiction in this complaint attaches to 42 U.S.C. § 1331; venue upon 28 U.S.C. § 1391(e); as well as the Eighth Amendment to the United States Constition and 42 U.S.C. § 1983.

PARTIES

1. THOMAS FLANNERY, the plaintiff, is a prisoner in the custody of the Massachusetts Department of Correction (MDOC) and incarcerated at MCI Shirley Medium.

[1] also JOSEPH MAROCCO, MICHAEL PARKIS, LT. HANLEY and LT.BARNEY

2. DR. BAUMEISTER, a defendant, is the resident psychiatrist employed directly or contractually by the Rhode Island Department of Correction (RIDOC) at the Adult Correctional Institution (ACI) in Cranston, RI 02920, and is relevant at all times in this complaint.

3. JOSEPH MAROCCO, a defendant, is the Associate Director of Health Care Services (HCS) of the RIDOC in Cranston and is also relevant at all times in this complaint.

4. MICHAEL PARKIS or POSHKUS, a defendant, medical doctor and resident administrator of HCS at ACI in Cranston, is relevant at all times in this complaint.

5. A. T. WALL, defendant, is the Director of the RIDOC, is relevant at all times in this complaint.

6. Defendants named in ¶¶ 2-5 are all sued in their official capacity as state actors, prison offcials of the RIDOC and their agents contractually retained or otherwise.

CLAIM

7. Defendants BAUMEISTER, MAROCCO, PARKIS or POSHKUS, acting in concert with each other, violated plaintiff FLANNERY's expectation to be safe and secure, as well as medically provided for, by a failure to exercise reasonable care in preventing appreciable harm, when they knew or should have known in the exercise of ordinary care, that FLANNERY is required to medicate with Klonopin, Remeron and Motrin so prescribed by competent physicians. U. S. Const. Amend 8.

8. Defendant WALL, by virtue of his unsolicited answer to FLANNERY's complaint notwithstanding his not being named in the initial complaint, but is here so named, with his tacit admission to the facts in the case, is complicit with the defendants named in ¶ 7, where FLANNERY does not implicate the doctrine of respondeat superior in the inclusion of WALL. U. S. Const. Amend 8.

9. Defendants BAUMEISTER, MAROCCO, PARKIS or POSHKUS and WALL, acting in concert with each other, did violate FLANNERY's civil rights by such conduct as described in ¶¶ 7 and 8, which subjected FLANNERY to cruel and unusual treatment while in their care and custody, where they knew or should have known that such actions violated FLANNERY's constitutional rights, but elected to proceed with their violative conduct despite being au courant with law as prison officials or their agents and acting under the color of state law. 42 U.S.C. § 1983.

10. Plaintiff FLANNERY shall make no claim under 42 U.S.C. § 1997 (II) or 42 U.S.C. § 1997a herein to this Amended Complaint, but invites judicial notice for the express purpose of noticing the Attorney General of the United States of his claim of civil rights under 42 U.S.C. §1983.

11. Plaintiff FLANNERY's claim under the 8th Amendment to the United States Constitution applies to Rhode Island through the Due Process Clause of the 14th Amendment to the United States Constitution. **Robinson v. California**, 370 U.S. 660, 666 (1962).

FACTS

12. On 01-25-06, FLANNERY is transfered to the ACI in Rhode Island from MCI Concord in Massachusetts for non-medical reasons.

13. On 01-25-06, FLANNERY is provided a medical screen to enter the ACI, which is conducted by a staff nurse. The screen states that FLANNERY is currently prescribed Klonopin 0.5mg BID, Remeron 60mg q.HS and Motrin 800mg, from the Massachusetts DOC.

14. On 01-26-06, FLANNERY submits a medical request to obtain his prescribed medication, but receives no response.

15. 01-30-06, FLANNERY is examined by BAUMEISTER and asks that he receive his prescribed medication, but is refused by the doctor on the basis that FLANNERY has not demonstrated or proven his need for the medication prescribed by the other state's DOC. In lieu of that which is presecribed, FLANNERY is to stary a regimen of Wellbutrin 100mg under supervision.

16. On 01-30-06, FLANNERY requests grievance form from Lieutenant Hanley to complaint about his denial of prescribed medical care and to begin his exaustion remedies, but is denied by the grievance officer who states that medical is not grievable and that the doctor's decision "is fine."

17. On 02-09-06, FLANNERY request a grievance from Lieutenant Barney to complain again for the lack of his prescribed medication, but is again denied for the same reason as cited in ¶ 16.

18. On 02-10-06, FLANNERY requests a copy of his medical file under 5 U.S.C. § 552, as well as Rhode Island law pertaining thereto, receives the brief narrative at a cost of $1.00, but without the sick request slips hoped-for.

19. On 02-12-06, FLANNERY submits another medical request for his prescribed medication and advises the HCS that he is having chest pains, which he believes is induced from anxiety attacks from the lack of his medication.

20. On 02-18-06, FLANNERY submites another medical request for his prescribed medication, advises HCS of his extreme and often painfil condition from anxiety, again to no avail.

21. On 02-23-06, FLANNERY submits another medical request to see the doctor relative to his deteriorating condition.

22. On 0228-06, FLANNERY send his second request for his medical records not yet received.

23. On 02-28-06, FLANNERY submits another medical request to complain again of his deteriorating condition.

24. On 03-12-06, FLANNERY again reminds the HSC of his painfil and deteriorating condition as a result of not taking his prescribed medications.

25. On or about 02-01-06, FLANNERY is confined in the segregated section and is kept isolated there until the day of his return to Massachusetts authorities on 04-18-06, as a result of a prison disciplinary matters, i.e., threatening a court officer, destroying state property, refusing direct orders of officers, as well as eratic behavior, to which he is often physically ill.

On 04-18-06, FLANNERY is restored to his prescribed medications by Dr. Lee Dynes at MCI Concord.

PRAYERS FOR RELIEF

The plaintiff respectfully prays that this Court ORDER:

1. amend, supplement or correct the rules and regulations having the force of law that shall be the measures that duly remedy the contrived and unlawful acts, allegedly, that are complained of in this action;

2. provide that defendants, through their respective counsel, comply with the local rule, LR 7.1(a)(2), for reasons of institutional or judicial economy, the plaintiff to follow;

3. cancel or otherwise delay the pretrial conference slated for April 10, 2007, before Justice William E. Smith of this Court;

4. saving any resolution, summary judgement, or actual settlement in this action, ORDER and award such compensatory and/or punitive damages to plaintiff as this Court deems fit and proper, to include any further relief deemed suitable.

VERIFICATION DECLARATION

I, Thomas Flannery, hereby certify that the foregoing facts and law references are true and accurate to the best of my ability, knowledge and belief; I am competent to testify in these matters.

Tom Flannery.

Thomas Flannery, pro se
Box 1218
Shirley, MA 01464

March 26, 2007

# EXHIBIT B

UNITED STATES DISTRICT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS FLANNERY | ) | |
| Plaintiff | ) | |
| v. | ) | C. A. NO. 06-399 |
| DR. BAUMEISTER et al | ) | |
| Defendants | ) | |

PLAINTIFF'S ANSWERS TO DEFENDANT'S

REQUEST FOR INTERROGATORIES PER RULE 33

INTERROGATORY NO. 1: State your full name ... (the plaintiff acknowledges the text in this request, accepts and agrees to its contents).

RESPONSE NO. 1: Plaintiff objects to this interrogatory on the basis that it is irrelevent and not calculated to lead to the discovery of admissible evidence, while generic in natute and clearly directed to a person or persons outside the scope of this matter. Without waiving said objection, the plaintff states that he is Thomas Flannery, never having aliases, currently incarcerated in a correctional institution in Massachusetts.

INTERROGATORY NO. 2: State the name ... (plaintiff acknowledges the text in this request, accepts and agrees to its contents).

RESPONSE NO. 2: Plaintiff can only cite those specifically mentioned in his Amended Complaint, as having any knowledge, direct or otherwise, of this matter, as well as the Jane Doe employed by the ACI Intake Center and made known to defendant POSHKUS in plaintiff's answer, Response No. 5, of request for production of documents.

INTERROGATORY NO. 3: If you, your attorney ... (the plaintiff acknowledges the text in this request, accepts and agrees to its contents).

RESPONSE NO. 3: Plaintiff has none.

INTERROGATORY NO. 4: If you, your attorney ... (the plaintiff acknowledges the text in this request, accepts and agrees to its contents).

RESPONSE NO. 4: Plaintiff has none.

INTERROGATORY NO. 5: If you have ever been ... (the plaintiff acknowledges the text in this request, accepts and agrees to its contents).

RESPONSE NO. 5: Plaintiff objects to this interrogatory on the basis that M.G.L.A. c. 6, § 172, as amended by St. 1990, c. 319, § 7-12, prohibits dissemination of such information to any non-criminal justice agencies. Without waiving his objection, the plaintiff states that he is currently serving a term of 5 to 6 years in a correctional facility in Massachusetts.

INTERROGATORY NO. 6: With respect to ... (plaintiff duly acknowledges the text in this request, accepts and agrees to its contents).

RESPONSE NO. 6: Plaintiff has none.

INTERROGATORY NO. 7: Describe in detail ... (the plaintiff acknowledges the text in this request, accepts and agrees with its contents).

RESPONSE NO. 7: Plaintiff asserts that while he claims that he has experienced appreciable harm as a result of the actions or inactions of the defendants, which are clearly emotional in

nature, psychological, too, he is not a physician or psychologist and cannot describe these injuries and to whether or not they are permanent of how they manifest themselves. He is, however, currently in treatment for such injuries and shall rely upon the clinical description of professionals.

INTERROGATORY NO. 8: State in detail those ... (the plaintifs acknowledges the text in this request, accepts and agrees to its contents).

RESPONSE NO. 8: See Response No. 7, while the plaintiff can state that his dosage of Klonopin 0.5mg has increased to 1.5mg, twice daily in the former and thrice in the latter.

INTERROGATORY NO. 9: State the name and address ... (the plaintiff acknowledges the text in this request, accepts and agrees to its contents).

RESPONSE NO. 9: Plaintiff is in custody of the Massachusetts Department of Correction at all times in this complaint, is treated by practitioners and nurses, doctors, that compliment the staff for physical, especially those in chronic care such as the plaintiff, most of whom chose to remain anonymous for obvious reasons, and who are employed by UMass Correctional Services. For his mental health, the plaintiff is regularly seen by a psychiatrist, alternated by a psychologist. Plaintiff does not incurr any expenses for such services.

INTERROGATORY NO. 10: If anyone has advised you ... (the plaintiff acknowledges the text in this request, accepts and agrees to its contents).

RESPONSE NO. 10: Plaintiff shall assert that he follows the professional advice of his medical custodians, to which he has little choice.

In addition to plaintiff's response to interrogatory 10, please refer to Response No. 8.

INTERROGATORY NO. 11: Are you, at this time, ... (plaintiff acknowledges the text in this request, agrees and accepts its contents).

RESPONSE NO. 11: See Response Nos. 8 and 10.

INTERROGATORY NO. 12: If you have ever suffered ... (the plaintiff acknowledges the text in this request, agrees and accepts its contents).

RESPONSE NO. 12: Plaintiff objects to this interrogatory as it is over-broad and not calculated to discovery admissible and relevent evidence in this matter. Without waiving said objection, the plaintiff states that and and all such information is contained in his medical history, copies of which have been requested by all defendants excepting WALL and MAROCCO.

INTERROGATORY NO. 13: State in detail ... (the plaintiff acknowledges the text in this request, agrees and accepts its contents).

RESPONSE NO. 13: Plaintiff has none further.

INTERROGATORY NO. 14: Set forth the ... (the plaintiff acknowledges the text in this complaint, agrees and accepts its contents).

RESPONSE NO. 14: Plaintiff's "conversations" were limited to health care professionsals at the institutional level and to whom such attendants are unknown by name to him, specifically as to nurses, doctors and the like. See Response No. 9.

<u>INTERRLOCUTARY NO. 15:</u> State specifically the injury ... (the plaintiff acknowledges the text in this request, agrees and accepts its contents).

<u>RESPONSE NO. 15:</u> See Response Nos. 8, 10, 14.

<u>INTERRLOCUTORY NO. 16:</u> State the name and address of your family physician and the date upon which he last examined you, treated, or cared for you prior to the date(s) recited in your complaint.

<u>RESPONSE NO. 16:</u> See Response No. 15.

<u>INTERROGATORY NO. 17:</u> In regard to ... (the plaintiff duly acknoeledges the text of this request, agrees and accepts its contents).

<u>RESPONSE NO. 17:</u> Plaintiff objects to this interrogatory on the basis that it is repetitive and where such information is contained in his Amended Complaint, per each category, including specifically, FACTS, ¶¶ 12-25.

<u>INTERROGATORY NO. 18:</u> State what, if anything, ... (the plaintiff acknowledges the text in this request, agrees and accepts its contents).

<u>RESPONSE NO. 18:</u> See Response No. 17.

<u>INTERROGATORY NO. 19:</u> State in detail, (the plaintiff acknowledges the text in this request, agrees and accepts its contents).

<u>RESPONSE NO. 19:</u> See Response No. 17.

<u>INTERROGATORY NO. 20:</u> State all facts ... (the plaintiff acknowledges the text in this request, agrees and accepts its contents).

RESPONSE NO. 20: Plaintiff objects to this interrogatory on the basis that it is over-broad, ambiguous, and not caluculated to unearth admissible evidence in this matter. In fact, the request deals with speculation per se, not facts.

INTERROGATORY NO. 21: Please state all facts ... (the plaintiff acknowledges the text in this request, agrees and accepts its contents).

RESPONSE NO. 21: See Response No. 20. Further, the facts that defendant seeks are contained in his Amended Complaint, FACTS, ¶¶ 12-25.

INTERROGATORY NO. 22: Identify any and all ... (the plaintiff acknowledges the text in this request, agrees and accepts its contents).

RESPONSE NO. 22: All such authoraties that plaintiff relies upon are contained in his Amended Complaint, in toto, while any furter divulgence by plaintiff is an invasion of his work product in this matter.

INTERROGATORY NO. 23: Please state whether you ... (the plaintiff acknowledges the text in this request, agrees and accepts its contents).

RESPONSE NO. 23: Plaintiff filed two (2) grievance requests and was denied to both. See Amended Complaint, FACTS, ¶¶ 16, 17.

INTERROGATORY NO. 24: Please set forth all ... (plaintiff acknowledges the text in this request, agrees and accepts its contents.)

RESPONSE NO. 24: Plaintiff objects to this request on the basis of it being repetitive. Such facts are contained in his Amended Complaint, as well as its basis. See said Com plaint, FACTS, ¶¶ 12-25.

Respectfully submitted,

Thomas Flannery, pro se
Box 1218
Shirley, MA 01464

July 13, 2007

CERTIFICATE OF SERVICE

I certify that I have served a true copy of my motion within to defendants' counsel: John Moretta, Esq.; Jay Elias, Esq.; Michael Grant, Esq., via first class mail, postage paid, this 14th day of July 2007.

Thomas Flannery, pro se
Box 1218
Shirley, MA 01464

# EXHIBIT C

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS FLANNERY | ) | |
| Plaintiff | ) | |
| v. | ) | C. A. NO. 06-399S |
| DR. BAUMEISTER et al | ) | |
| Defendants | ) | |

PLAINTIFF'S RESPONSE TO DEFENDANT POSHKUS'

REQUEST FOR INTERROGATORIES PER RULE 33

INTERROGATORY NO. 1: Please state the full name ... (the plaintiff acknowledges the text contained in this request and accepts and agrees to its contents).

RESPONSE NO. 1: Plaintiff objects to this interrogatory, which is irrelevent and not calculated to lead to discoverable and admissible evidence, as it is propounded to persons that are unlike plaintiff and not imprisoned. In fact, this request is generic in nature and simply caluclated to bog down plaintiff, who is not au courant with law. Further, without waiving said object, the plaintiff asserts that he is Thomas Flannery, having no aliases, incarcerated at MCI Shirley Medium in Massachusetts, as well as a citizen of the United States.

INTERROGATORY NO. 2: Please describe ... (the plaintiff duly acknowledges the text contained in this request, accepts and agrees to it contents).

RESPONSE NO. 1: Plaintiff objects to this interrogatory, which

is repetitive where significant details, without divulging the plaintiff's work product, are contained in his Amended Complaint, FACTS, ¶¶ 12-25. Without waving said object, the plaintiff also asserts that such responses are contained in his Answers to the defendant's request for Production of Documents.

INTERROGATORY NO. 3: With respect to the claims ... (the plaintiff acknowledges the text in this request, accepts and agrees with its contents).

RESPONSE NO. 3: Plaintiff has absolutely alleged in his Amended Complaint a civil rights abridgement under 42 U.S.C. § 1983 against defendant POSHKUS and others, which is clear on its fact in CLAIM, ¶ 7. Further, both knowledge and truth in this claim lie with each defendant by virtue of the FACTS as described in the Amended Complaint, FACTS, ¶¶ 12-25.

INTERROGATORY NO. 4: With respect to the claims ... (the plaintiff acknowledges the text in this request, accepts and agrees with its contents).

RESPONSE NO. 4: Plaintiff has also alleged an 8th Amendment claim against defendant POSHKUS and others, which is clear on its face in CLAIM, ¶ 7. See also, plaintiff's Amended Complaint also includes the FACTS, ¶¶ 12-25, which delineates such facts and the truth of this allegations.

INTERROGATORY NO. 5: With respect to the claims ... (the plaintiff acknowledges the text in this request and accepts and agrees with its contents).

RESPONSE NO. 5: See Response Nos. 3 and 4 in the preceeding.

INTERROGATORY NO. 6: With respect to the claims ... (the plaintiff acknowledges the text in this request and accepts and agrees with its contents).

RESPONSE NO. 6: Plaintiff has not alleged medical malpractice.

INTERROGATORY NO. 7: With respect to the claims ... (the plaintiff acknowledges the text in this request, accepts and agrees with its contents).

RESPONSE NO. 7: Plaintiff acknowledges that he did allege that defendant POSHKUS knew or should have known the consequences of his actions or non-actions, as well as plaintiff's medical history where both such circumstances are detailed in his Amended Complaint in both CLAIM and FACTS.

INTERROGATORY NO. 8: With respect to the claims ... (the plaintiff acknowledges the text in this request, agrees and accepts its contents).

RESPONSE NO. 8: Plaintiff does allege that defendant POSHKUS knew or should have known of the medical slips and grievances described in this matter by virtue of the fact that he is the medical director and resident administrator of health care services where he knew or should have known of the consequences of plaintiff's dilemma, both medically and administratively, as alleged in plaintiff's Amended Complaint in PARTIES, ¶ 4, as well as CLAIM and FACTS.

INTERROGATORY NO. 9:

With respect to the allegations ... (the plaintiff duly acknowledges the text in this request, accepts and agrees to its contents).

RESPONSE NO. 9: See response No. 8 as it applies to his request for medical records.

INTERROGATORY NO. 10: State whether you have ... (plaintiff acknowledges the text in this request, accepts and agrees with its contents).

RESPONSE NO. 10: Plaintiff object to this request on the basis that M.G.L.A. c. 6, § 172, as amended by St. 1990, c. 319, § 7-12, prohibits dissemination of criminal record information (CORI) to non-criminal justice agencies. Without waiving his objection, the plaintff states that he is currently serving a term of 5-6 years at MCI Shirley where he is in custody of state officials.

INTERROGATORY NO. 11: With respect to the allegation ... (the plaintiff acknowledges the text in this request, accepts and agreess with its contents).

RESPONSE NO. 11: See Response Nos. 8 and 9, as it relates to defendant DR. BAUMEISTER.

INTERROGATORY NO. 12: With respect to the allegations ... (the plaintiff acknowledges the text in this request, accepts and agrees with its contents).

RESPONSE NO. 12: Plaintiff objects to this interrogatory on the basis it is ambiguous. Defendant does not explain exactly what "the minimum standard of care required under the law" is meant to be. Without waiving his objection, the plaintiff refers to Reponse Nos. 8 for as direct an answer as can be stated.

INTERROGATORY NO. 13: With respect to the allegations ... (the plaintiff acknowledges the text in this request, accepts and agrees with its contents).

RESPONSE NO. 13: See Response No. 8.

INTERROGATORY NO. 14: With respect to allegations ... (the plaintiff acknowledges the text in this request, accepts and agrees with its contents).

RESPONSE NO. 14: Plaintiff objects to this interrogatory on the basis that it is unclear whether or not that it would likely implicate the issue of respondeat superior in the inclusion of this defendant, or implicate a "standard operating procedure" where each grievance and/or medical is subject to his review. Without waiving his objection, the plaintiff states that this defendant knew or should have known that his actions or inactions would be consequential to the plaintiff in this matter. See also, Response No. 8.

INTERROGATORY NO. 15: With respect to the allegations ... (the plaintiff acknowledges the text in this interrogatory, accepts and agrees with its contents).

RESPONSE NO. 15: See Responsive No. 4.

INTERROGATORY NO. 16: With respect to the claims ... (the plaintiff acknowledges the text in this request, accepts and agrees with its contents).

RESPONSE NO. 16: See Responsive Nos. 3 and 4.

INTERROGATORY NO. 17: With respects to the claims ... (the plaintiff acknowledges the text in this interrogatory, accepts and agrees with its contents).

RESPONSE NO. 17: See Response No. 3.

INTERROGATORY NO. 18: Identify by name and address ... (the plaintiff acknowledges the text of this interrogatory, agrees and accepts its contents).

RESPONSE NO. 18: Plaintiff states that he has been treated by health care professionals in both physical impairments and in mental health issues, primarily, while incarcerated, since 1997. Such providers are: (1) Elmwood Correctional Facility in Milpitas, CA, 1997; (2) Broward County Jail in Ft. Lauderdale, FL, in 2003; (3) Conti Correctional Facility in 2003, Pompano Beach, FL; (4) Rikers Island, Queens, NY, in 2005, as well as the currect custody. Further, plaintiff asserts that he traveled often, usualy between periods of imprisonment, not having a permanent residence.

INTERROGATORY NO. 19: Identify each person ... (the plaintiff acknowledges this request and agrees and accepts it contents).

RESPONSE NO. 19: Plaintiff has none.

INTERROGATORY NO. 20: Plaintif acknowledges this interrogatory and the text thereon, agrees and accepts its contents).

RESPONSE NO. 20: Plaintiff has none.

INTERROGATORY NO. 21: Plaintiff acknowledges the text in this request, acceprs and agrees with its contents).

RESPONSE NO. 21: Plaintiff has none.

INTERROGATORY NO. 22: Plaintiff acknowledges the text in this request, accepts and agrees with its contents).

RESPONSE NO. 22: Plaintiff has none.

INTERROGATORY NO. 23: Plaintiff acknowledges the text in this interrogatory, agrees and accepts its contents.

RESPONSE NO. 23: Plaintiff states that he relies upon his verified complaint, amended, which has been served upon the defendants.

INTERROGATORY NO. 24: Plaintiff acknowledges the text of this interrogatory, agrees and accepts its contents.

RESPONSE NO. 24: Plaintiff objects to this interrogatory on the basis that it is deceptive in that the omission of the defendant inquired of does not relate to this defendant provided that category c), Treatment of management of patient care, does not relate to this defendant's specific actions. Without waiving his objection, the plaintiff states that POSHKUS knew or should have known of plaintiff's plight while in his care and custody, indirectly and directly, that violated plaintiff's civil rights and subjected him to cruel and unusal punishment. See plaintiff's Amended Complaint.

INTERROGATORY NO. 25: Plaintiff acknowledges the text in this interrogatory, agrees and accepts with its contents.

RESPONSIVE NO. 25: Plaintiff has never filed a lawsuit or asserted a claim, as described in this request.

Respectfully submitted,

Thomas Flannery, pro se
Box 1218
Shirley, MA 01464

July 13, 2007

CERTIFICATE OF SERVICE

I certify that I have served a true copy of my motion within to defendants' counsel: Jay Elias, Esq.; John Moretta, Esq.; Michael Grant, Esq., via first class mail, postage paid, this 13th day of July 2007.

Thomas Flannery

# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**THOMAS FLANNERY**

**vs.** **C.A. NO. 06-399S**

**DR: BAUMEISTER; JOSEPH MAROCCO; MICHAEL PARKIS; LT. HANLEY; LT. BARNEY; SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES**

**EXPERT DISCLOSURE OF DEFENDANT, MARTIN BAUERMEISTER, M.D.**

**Dr. Barry W. Wall, M.D.**
184 Waterman Street
Providence, Rhode Island 02906
Psychiatry

Dr. Wall is Board Certified in Psychiatry. He will testify based on his education, training, knowledge, and experience, as well as a review of the patient's medical records, and other pertinent discovery. Dr. Wall is expected to testify concerning standard of care, causation and damages.

Dr. Wall will testify that I, at all times, acted appropriately and within the standard of care in treating and prescribing medications for Mr. Flannery. More specifically, Dr. Wall will testify that the treatment I provided Mr. Flannery between January 2006 and April 2006 while he was incarcerated at the Rhode Island Department of Corrections was reasonable and within the standard of care as based on the patient's symptoms, the history provided by Mr Flannery, my evaluations of Mr. Flannery's symptoms and Mr. Flannery's description of his symptoms regarding alleged panic attacks and anxiety disorder.

Dr. Wall will also address opinions expressed by the plaintiff's experts in discovery and at trial, and on the nature and substance of the medical examinations and treatment provided to Mr. Flannery.

**Dr. Martin Bauermeister**
17 Bay Street
Wickford, Rhode Island 02852-5001
Psychiatry

I am Board Certified in General Psychiatry, Child Psychiatry, Adolescent Psychiatry, Geriatric Psychiatry, Administrative Psychiatry, and Forensic Psychiatry. I will testify based on my education, training, knowledge, experience, as well as a review of the patient's medical records and other pertinent discovery compliance.

I will testify concerning standard of care, causation and damages. I will testify that I acted appropriately and within the standard of care at all times during my treatment of Mr. Flannery

I will base my opinions upon the history provided by Mr. Flannery, my examinations of him, review of certain records and discussions with Mr. Flannery and medical practitioners. Further, my opinions will be based upon my education, training and experience as a board certified psychiatrist.

The expert named above and I will also address opinions expressed by the Plaintiff's expert witnesses, if any, in discovery and at trial.

I reserve the right to supplement this answer in accordance with the Rules of Civil Procedure. I reserve the right to call any and all medical personnel who treated the patient as witnesses at the time of trial.

Furthermore, I reserve the right to supplement or modify the expert disclosure herein. I further reserve the right to amend the disclosure upon receipt of additional information gathered through discovery.

M. Bauermeister
Martin Bauermeister, M.D.

Subscribed and sworn to before me this 24th day of July, 2007

John B. Mattera (10/31/10)
Notary Public

**CERTIFICATION**

I hereby certify that I caused a copy of the within to be delivered to the following attorneys of record on the 25th day of July, 2007.

**LEGAL MAIL**
**PERSONAL AND CONFIDENTIAL**
Thomas Flannery, # W-86388
MCI Shirley
P.O.Box 1218
Shirley, MA 01464

Michael B. Grant
40 Howard Avenue
Cranston, RI 02920

Jay M. Elias, Esq.
Ratcliffe, Burke Harten & Elias, LLP
1600 Financial Plaza
Providence, Rhode Island 02903

Suzanne S. Kelley

BARRY W. WALL, M.D.
184 WATERMAN STREET
PROVIDENCE, RHODE ISLAND 02906

(401) 273-1010

July 23, 2007

John B Moretta, Esq
Roberts, Carroll, Feldstein & Pierce, Inc.
10 Weybosset Street
Providence, Rhode Island 02903-2808
tel 401-521-7000
fax 401-521-1328

**RE: Flannery v. Bauermeister, Ph.D., M.D.**
**United States District Court, District of Rhode Island,**
**civil action # 06-399S**
**Your file No. 70-71**

Dear Atty Moretta:

Pursuant to your request, I have reviewed the information you provided in the above-named case to assess whether Dr Martin Bauermeister was deliberately indifferent to an inmate's serious medical needs and to assess the overall care that he provided The case arises from the allegation by Mr Thomas Flannery that Dr Martin Bauermeister and others at the Rhode Island Department of Corrections (RIDOC) failed to render appropriate medical care during his sixth detention at the Adult Correctional Institutions (ACI), which occurred from January 2006 to April 2006

## SUMMARY OF OPINIONS

1 In my opinion, based on the information available to me, the level of care that Dr Bauermeister provided to Mr Flannery was not deliberately indifferent to his medical needs.
2 In my opinion, based on the information available to me, Dr Bauermeister's medical treatment of Mr Flannery was within the correctional standard of care.
3 In my opinion, based on the information available to me, Mr Flannery's lack of full participation in the treatment that was offered to him at the ACI likely contributed to his self-reported symptoms.
4 In my opinion, based on the information available to me, factors other than Mr Flannery having anxiety contribute to Dr Bauermeister's analysis and treatment of him

## SOURCES OF INFORMATION

I reviewed the following information that you provided:

1 Copy of amended complaint prepared by Mr Flannery, pro se, dated 3/26/2007;
2 Six medical and/or mental health requests prepared by Mr Flannery, dated from 2/6/2006 to 3/12/2006;
3 Two request forms, one to Lt. Barney, dated 2/9/2005 [2006?], and one to Lt Hanley, dated 1/30/2006, prepared by Mr Flannery; and,

4 Mr Flannery's ACI medical records of his six detentions there; these records are dated from 11/13/2001 to 3/28/2007 They include Medical Entrance Screens, non-mental health physician and nursing notes, mental health notes; medication logs; laboratory data; and the like.

**SYNOPSIS OF MR. FLANNERY'S COMPLAINT AND REQUEST FORMS**

(Some of the medical/mental health request slips are Xeroxed poorly and are difficult to read )

On 1/26/2006, Mr Flannery "submits a medical request to obtain his prescribed medication, but receive[d] no response."

On 1/30/2006, Mr Flannery's request for Klonopin (anti-anxiety medication that can be a medication of addiction) and Remeron (antidepressant medication) were "refused by [Dr Bauermeister] on the basis that [Mr Flannery] has not demonstrated or proven his need for the medication prescribed by the other state's [Department of Correction] "

At least six times between 1/30/2006 and 3/12/2006, Mr Flannery requested grievances, submitted medical requests, and told others about "his denial of prescribed medical care." On 1/30/2006, he wrote to Lt Hanley, "I'm familiar with 42 USC 1983 and have tied up [correctional officers] and others up in litigation so please supply requested grievance to clear the way for such action."

From on or about 2/01/2006 to 4/18/2006, Mr Flannery was placed in segregation "as a result of a prison disciplinary matters (sic), i.e., threatening a court officer, destroying state property, refusing direct orders of officers, as well as er[r]atic behavior, to which he is often physically ill (sic)." On 2/12/2006, he informed "HCS" that he is "having chest pains, which he believes is induced from anxiety attacks from the lack of his medication."

**SYNOPSIS OF ACI MEDICAL RECORDS**

**Synopsis of assessments and known past treatment prior to the January 2006 detention**: The medical records tell the following story of Mr. Flannery's illness and treatment outside of RIDOC prior to January 2006 He reported depression in 2002 and anxiety in 2004 There is a 11/29/2004 notation that he received treatment in a California prison in 2002. He reported past treatment with Seroquel (antipsychotic medication that can also treat anxiety), trazodone (medication use to help with sleep), Elavil (antidepressant medication with anti-anxiety properties), and Valium and Xanax (anti-anxiety medications similar to Klonopin, and as such can also be drugs of abuse).

Every time Mr. Flannery was obtained at the ACI, he always got a screening evaluation At times he received a psychiatric referral, at other times a mental health (nonpsychiatric) referral, at times both, and at other times he did not receive mental health referrals at all The type of referral that he got depended on his mental state at the time of the screenings Sometimes he reported long-standing anxiety from childhood (e.g on 12/27/2004), but at other times he reported no mental health problems (e.g on 11/13/2001)

**Synopsis of medical records of the January 2006 to April 2006 detention:**

*Information obtained from Medical Entrance Screening* On 1/25/2006, Mr. Flannery received his Medical Entrance Screen He reported being on Klonopin 1 mg per day in divided doses; Remeron 60 mg per day; and Motrin 800 mg He was assessed as being appropriate for the general population, and was referred to mental health and psychiatry.

*Information obtained from medical and mental health progress notes*: Dr Bauermeister evaluated Mr Flannery five days later, and wrote, "[Mr Flannery] is argumentative and demanding He claimed to have panic attacks and nothing works Start Wellbutrin 100 mg [at bedtime]." In this note, Dr Bauermeister underlined the words depression and panic attacks Based on the underlining of these words, it appears to me that Dr Bauermeister prescribed Wellbutrin for depression, yet had concerns about whether Mr Flannery was having bona fide panic attacks, as he wrote: "For medically documented panic attacks give Vistaril (antianxiety medication) 50 mg not to exceed two doses in 24 hours without referral back for review. I told [Mr Flannery] to report physical symptoms to [correctional officer], not simply to say 'panic attack.'"

On 2/13/2006, Dr Bauermeister wrote that Mr Flannery was "complaining that Wellbutrin does not help with his panic attacks He did, however, not a single time report such an attack [or] come to nursing and get the prescription I have [ordered] him. He also complained about insomnia but refused sleep study His mental status was entirely normal No signs of panic, anxiety, sleep deprivation, major mental illness " Later that same day, Dr Bauermeister also wrote, "[Mr Flannery] is on K mod (a segregation unit) due to making threats."

On 2/27/06, Dr Bauermeister wrote, "[Mr Flannery] had been instructed specifically to report physical symptoms of panic attacks said that he would be seen by nursing staff and have his vital signs taken to document I also had ordered sleep monitoring which [he] refused. He is on antidepressant Wellbutrin 100 [milligrams at bedtime] and [as needed] order of Vistaril for panic attacks "

On 3/13/06, a social worker whose name is illegible wrote that Mr Flannery had put in a slip, and therefore was being seen He indicated "both medical and [mental health] issues. He stated that he has been feeling [increasingly] anxious, was unable to stop moving and shaking legs He stated he has been unable to sleep which causes him additional anxiety " He signed a release of information for the Massachusetts Correctional Institute-Concord He then explained why the Wellbutrin was not working The social work then referred him to Dr Bauermeister Dr. Bauermeister evaluated him the next day, writing the word "reviewed" in the chart

On 3/27/06, Dr Bauermeister again met with Mr Flannery, and wrote that he was "still complaining [of] insomnia and anxiety attacks However, he has never reported to nursing staff! I do have an order for Vistaril in case of documented anxiety attacks. He did refuse sleep monitoring. We have no confirmation of treatment in Massachusetts [illegible] today."

The last note by Dr Bauermeister was on 3/28/2006 He noted that Mr Flannery appeared "anxious, depressed-I shall discontinue Wellbutrin 100 [milligram] and replace it with Elavil [200 mg per day in divided doses] "

*Information obtained from medical request prepared by Mr Flannery, dated 2/10/2006*: Mr Flannery wrote, "Dr Bauermeister .. refused to give me my doctor ordered Klonopin and Remeron he gave the Wellbutrin I don't want it as it doesn't work I'm having severe panic attacks and constant anxiety .."

*Information obtained from medication order sheets and medication logs*: Nursing was under Dr Bauermeister's order to administer 50 mg of Vistaril "for medically documented panic attacks," including changes in vital signs The order additionally states "do not give more than two doses in 24 hours without referring back to Dr Bauermeister " There is no record of Mr Flannery ever taking this medication, even though it was ordered to be given as needed

The February 2006 medication sheet indicates that Mr. Flannery took Wellbutrin 100 mg at bedtime from 2/1/2006 to 2/10/2006 After that, he consistently refused to take Wellbutrin, from 2/12/2006 to 3/10/2006

Mr Flannery began taking Elavil on 3/29/2006, 3 times a day, pretty much every day, until he was released from the facility

**DISCUSSION**

**Summary of opinions**: My opinions are limited by my not having personally examined Mr. Flannery

1. In my opinion, based on the information available to me, the level of care that Dr Bauermeister provided to Mr Flannery was not deliberately indifferent to his medical needs
2. In my opinion, based on the information available to me, Dr Bauermeister's medical treatment of Mr Flannery was within the correctional standard of care
3. In my opinion, based on the information available to me, Mr Flannery's lack of full participation in the treatment that was offered to him at the ACI likely contributed to his self-reported symptoms.
4. In my opinion, based on the information available to me, factors other than Mr Flannery having anxiety contribute to Dr. Bauermeister's analysis and treatment of him

**Discussion**: The medical record indicates that Mr Flannery reported depression and panic attacks to Dr Bauermeister, but that Dr Bauermeister had concerns about the veracity of his account of panic attacks (although he documented and supported the need for treatment of depression) Dr Bauermeister wanted confirmation of panic symptoms, which, in my opinion, is understandable given that Mr. Flannery reportedly appeared "argumentative and demanding" about his medications, and that there must be a consideration of malingering or symptom exaggeration in a correctional population Dr. Bauermeister prescribed Vistaril, an anti-anxiety medication, for immediate symptom management of anxiety, and instructed Mr. Flannery to report to nursing any physical symptoms. The records indicate that Mr. Flannery never did so, instead submitting a number of slips and getting into a struggle with the institution in general, and Dr Bauermeister in particular, about whether Dr. Bauermeister would prescribe medications that Mr Flannery wanted to take He was upset that Dr Bauermeister did not agree to prescribe these medications, and equates "deliberate indifference" with Dr. Bauermeister's decision to watch and wait to gather additional information before deciding to treat Ultimately, however, Dr. Bauermeister changed Mr Flannery's antidepressant medication to Elavil, which has both antidepressant and anti-anxiety properties, in response to his observation that Mr Flannery had ongoing nonspecific anxiety symptoms. There was never confirmation that Mr Flannery had a bona fide Panic Disorder, in part because he did not participate with Dr Bauermeister's request to present when he believed he was experiencing symptoms Medical records were requested from Massachusetts, but based on the fact I did not receive them, I assume that the ACI did not receive them

In my opinion, based on the information available to me, the level of care that Dr Bauermeister provided to Mr. Flannery was not deliberately indifferent to his medical needs This opinion is based on the following reasons:

1. During the sixth detention, Mr Flannery was evaluated by Dr Bauermeister on at least five occasions within eight weeks The frequency of such appointments indicates that Dr. Bauermeister was attentive to Mr Flannery's case. He also reviewed the case on 3/14/2006 after a social worker informed him that Mr. Flannery had complaints on 3/13/2006, which suggests concern about the case rather than indifference

2 The progress notes indicate that Dr Bauermeister recorded relevant data, and then analyzed it and developed a treatment plan in response to his case formulation. The case formulation changed over time, in response to Mr Flannery's report of symptoms as well as his lack of response to, and lack of participation in, treatment. In contrast to Mr Flannery's complaint that he received "no response" to a medical request to obtain his prescribe medication, Dr. Bauermeister met with him and prescribed medication on 1/30/2006. Further, Dr Bauermeister changed the medication on 3/28/2007 in response to his observation that Mr. Flannery remained depressed and anxious. This suggests concern and involvement, rather than in difference, to Mr Flannery's request for treatment

3 Dr Bauermeister always treated, and never had clinical questions regarding, Mr Flannery's report of depression This indicates that he was not dismissive of Mr Flannery's self-report of symptoms.

4. It is clear from the notes that Dr Bauermeister questioned whether Mr Flannery had bona fide panic attacks The notes indicating that Mr. Flannery was "argumentative and demanding," imply, in my opinion, that Dr Bauermeister wondering whether Mr. Flannery's request for medication was related more to his personality style Because there should always be a consideration of malingering in a correctional setting, Dr Bauermeister, in my opinion, understandably wanted to have documentation of a true panic attack before diagnosing and proceeding with formal treatment of a Panic Disorder One way of getting that information was to assess for symptoms, and Dr. Bauermeister instructed Mr. Flannery to bring these symptoms to the attention of the system when he was actually having them, which Mr Flannery did not do Another way to get that information was to request outside records, and the progress notes indicate that these were requested

5 Anti-anxiety medications like Klonopin can be used as an illicit currency in correctional settings, so some correctional settings have a high threshold for prescribing them A reluctance to prescribe them in certain cases is, therefore, within the standard of care, because it would not be therapeutic to prescribe such medications for everyone who asks for them Not readily prescribing Klonopin because the treating physician is concerned that the patient may not truly having the symptoms he reports, and wanting to have documented symptoms before prescribing it does not constitute, in my opinion, a calculated indifference on the part of a treating physician

6 Even though Dr. Bauermeister questioned the veracity of Mr Flannery's self-report of panic attacks, he still made Vistaril available to him and instructed him to report the physical symptoms of anxiety to the correctional officers said that he could be evaluated by nursing That is, he instructed Mr Flannery what to do in the event of experiencing a true panic attack, and had a medication available to him to lessen his anxiety in the moment. Further, he instructed the nurses to not prescribe more than two doses of Vistaril to Mr. Flannery in a 24-hour period without speaking with him directly. Providing these instructions to Mr Flannery, ordering a medication to treat symptoms if they emerged, and educating nursing staff about what to do – including notifying him as the physician – constitute active treatment efforts by Dr Bauermeister

7 Even though Dr Bauermeister questioned the veracity of Mr. Flannery's self-report of panic attacks, he assessed Mr Flannery to have anxiety, and formally discontinued Wellbutrin and then started Elavil, a medication used to treat depression and anxiety, to treat his ongoing self-reported symptoms Making a medication change in an attempt to treat his depression and anxiety, even during the struggle that emerged over the other medications, indicates that Dr Bauermeister took action as thought it was indicated

In my opinion, based on the information available to me, Dr Bauermeister's medical treatment of Mr. Flannery was within the correctional standard of care This opinion is based on the following reasons:

1 Every time Mr Flannery was obtained at the ACI, he always got a screening evaluation as a part of the ACI's systematic evaluation program to detect persons with mental illness In response to

this systematic evaluation process, Mr. Flannery was evaluated by mental health professionals, when indicated, during his detentions This type of assessment is within the standard of care
2. Dr Bauermeister evaluated Mr. Flannery, a person endorsing depression and anxiety without suicidal thoughts, at least five times within eight weeks This frequency is with the standard of care
3. Dr. Bauermeister treated Mr. Flannery's depression with Wellbutrin, an antidepressant medication. This medication choice is within the standard of care
4. Dr Bauermeister did not treat Mr Flannery for panic disorder because there was no evidence that he had it He developed a plan to assess whether he had bona fide panic disorder, as noted above
5. Although Vistaril is not used to treat panic disorder per se, it is reasonable to use this medication to symptomatically treat symptoms of anxiety pending documentation of panic attacks.

In my opinion, based on the information available to me, Mr Flannery's lack of full participation in the treatment that was offered to him at the ACI likely contributed to his self-reported symptoms. This opinion is based on the following reasons:

1. Dr. Bauermeister's notes on 2/13/2006, 2/27/2006 and 3/27/2006 indicate that Mr. Flannery did not comply with doctor's orders to report to nursing whenever he had physical symptoms. Not reporting symptoms (if he had them) stymied Dr Bauermeister's efforts to diagnose Mr. Flannery with Panic Disorder
2. The medical records indicate that Mr. Flannery only took about 10 doses of Wellbutrin After that, he began to refuse it Without giving it a full course, it was not possible for Dr Bauermeister to assess whether Wellbutrin could improve Mr. Flannery's mood
3. Dr Bauermeister's notes on 2/13/2006, 2/27/2006 and 3/27/2006 indicate that Mr Flannery refused sleep monitoring

In my opinion, based on the information available to me, factors other than Mr. Flannery having anxiety contribute to Dr Bauermeister's analysis and treatment of him This opinion is based on the following reasons:

1. Dr. Bauermeister's note on 1/30/2006 indicated that Mr Flannery was "argumentative and demanding," and his notation that Mr Flannery reported having panic attacks for which "nothing works" is consistent with a black and white style of thinking These notations are consistent with a personality overlay that may color Mr Flannery's perception of his experiences, including Dr Bauermeister's reasonable skepticism about whether he needed Klonopin
2. On 2/13/2006, Dr. Bauermeister's notation of Mr Flannery's being in segregation due to his "making threats" is consistent with a personality problem Being threatening to others is not a symptom of a panic attack
3. Mr Flannery refused offered medications. Such behavior is consistent with an attempt to control the treatment, rather than to participate in it It can also be consistent with a maladaptive personality style.
4. "Threatening a court officer, destroying state property, refusing direct orders of officers, as well as er[r]atic behavior" are not criteria for panic disorder. They are more consistent with a personality problem rather than an anxiety or depressive disorder.
5. Intimating that one's requests require action to prevent a lawsuit is consistent with a controlling style: "I'm familiar with 42 USC 1983 and have tied up [correctional officers] and others up in litigation so please supply requested grievance to clear the way for such action "

## MY QUALIFICATIONS

A copy of my résumé is appended to this report. The above review is based on my knowledge of jails and prison systems.

## COMPENSATION

I bill at a flat rate of $325 per hour.

## MY TESTIMONY WITHIN THE PAST FOUR YEARS

| | date | type | | name of case | venue | on behalf of |
|---|---|---|---|---|---|---|
| 1 | 3/21/03 | Hearing | PFI | in re David Lasseque | Providence District/Superior | MHRH |
| 2 | 8/31/05, 1/25/06, 1/30/06 | Hearing | specialized services | in re Ronald Posner | Prov. Superior/ Judge Dimitri | MHRH |
| 3 | 6/12/06 | Hearing | Civil commitment | In re Jason Sam | Prov. Dist/ Judge Derobbio | MHRH |
| 4 | 12/18/06 | Hearing | CST | State v. Salgado | Prov. Superior/ Judge Indeglia | MHRH |
| 5 | 5/4/07 | Trial | Insanity | State v. Fuller-Balletta | Prov. Superior/ Judge McGuirl | Prosecution |

Thank you for this consultation. Please contact me if you have any questions.

Barry W. Wall, M.D.
Board-Certified in Adult & Forensic Psychiatry
Clinical Associate Professor of Psychiatry, Brown Medical School
Distinguished Fellow, American Psychiatric Association

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **THOMAS FLANNERY** | : | |
| | : | |
| **v.** | : | **C.A. No. 06-399S** |
| | : | |
| **DR. BAUMEISTER; JOSEPH MAROCCO;** | : | |
| **MICHAEL PARKIS, and A.T. WALL** | : | |

**DEFENDANT MICHAEL PARKIS [POSHKUS], M.D.'S EXPERT WITNESS DISCLOSURE**

Now comes defendant Michael Poshkus, M.D. and, pursuant to the Pretrial Order of this Honorable Court, hereby provides his expert witness disclosure as required by Rule 26 of the Federal Rules of Civil Procedure as follows:

**Donald C.Kern, M.D.**
**Sudbury, Massachusetts**

Attached and incorporated hereto is the expert report (Exhibit A) generated by Donald C. Kern, M.D., as well as his Curriculum Vitae (Exhibit B).

In addition to the expert witness identified above, defendant Michael Parkis [Poshkus], M.D. reserves the right to rely upon any expert witness identified by any of the party co-defendants. This defendant also reserves the right to rely upon the testimony of the co-defendants, as well as the testimony of representatives of the Rhode Island Department of Corrections Adult Correctional Institution ["ACI"]. This defendant further reserves the right to call as expert witnesses any of the plaintiff's health care providers, including any treating providers who may be identified by plaintiff, for the purpose of testifying to their care and treatment as set forth in the plaintiff's medical records.

Respectfully submitted,

**Defendant Michael Parkis [*sic*] [Poshkus]**

Subscribed and sworn to before me at Cranston, Rhode Island, on the 26th day of July 2007.

Notary Public
My Commission Expires: 8/18/08

Pursuant to Rule 26(f):

Jay M. Elias, Esquire (#3050)
Ratcliffe Burke Harten & Elias LLP
1600 Financial Plaza
Providence, RI 02903
401.331.3400
401.331.3440 [Fax]

# CERTIFICATION

I hereby certify that a true copy of the within was mailed, postage prepaid, on this 26th day of July 2007 to the following:

***Legal Mail/Confidential***
Mr. Thomas Flannery, #W-86388
MCI Shirley
P. O. Box 1218
Shirley, MA 01464

Michael B. Grant, Esquire
Department of Corrections
40 Howard Avenue
Cranston, RI 02920

John B. Moretta, Esquire
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street, 8th Floor
Providence, RI 02903

Donald C. Kern, MD, MPH, CCHP
7 Hammond Circle
Sudbury, MA 01776

Jay M. Elias, Esquire
Ratcliffe Burke Harten and Elias LLP
1600 Financial Plaza
Providence, Rhode Island 02903

July 23, 2007

**Re: Thomas Flannery v. Michael Poshkus, M.D.**
**Expert Report**

Dear Mr. Elias:

I write in connection with the case of *Flannery v. Poshkus*

I have, as you requested, reviewed the materials you sent me regarding Thomas Flannery The materials included the initial Complaint filed by Mr. Flannery, his Amended Complaint, and the medical records of the Rhode Island Department of Corrections Adult Correctional Institution

**Qualifications**

My qualifications to serve as an expert witness in behalf of Dr. Poshkus include the following, all of which are more specifically contained in my Curriculum Vitae, a copy of which is attached to this report:

**Pertinent Employment History:**

| | |
|---|---|
| 7/82 - 8/95 | Staff Physician, Edith Nourse Rogers Memorial Veterans Administration Hospital, Bedford, MA |
| 8/95 - 9/96 | Medical Director, MCI-Shirley |
| 8/95 - 9/96 | Medical Director, MCI-Lancaster |
| 9/96 - 8/97 | Medical Director, MCI-Concord |
| 8/97 - 11/03 | Medical Director, MCI-Old Colony Correctional Center |
| 11/03 – 6/04 | Medical Director; MCI-Cedar Junction |
| 11/03 – 6/04 | Associate Program Medical Director, Program in Health Care and Criminal Justice, Commonwealth Medicine, UMASS Medical School |

| | |
|---|---|
| 7/04 -- 7/05 | Medical Director, Correctional Health Services, Health Care Access & Improvement, Department of Health and Mental Hygiene, The City of New York |
| 7/05 -- 3/06 | Special Consultant, Correctional Health Services, Health Care Access & Improvement, Department of Health and Mental Hygiene, The City of New York |
| 4/06 – | Consultant in Correctional Health |

**Other offices and appointments:**

| | |
|---|---|
| 1979 - 1981 | Member, Council on Continuing Physician Education, American Medical Association |
| 1980 - 1984 | Delegate from Massachusetts to the American Medical Association-Resident Physician Section |
| 1982 - 1995 | Assistant Professor, Boston University School of Medicine |
| 1983 - 1995 | Assistant Professor, Boston University School of Public Health |
| 1984 - 1991 | Member, Quality Assurance Board, Edith Nourse Rogers Memorial Veterans Administration Hospital, Bedford, MA (Chairman, 1984-1989) |
| 1990 - 1997 | Delegate, Massachusetts Medical Society House of Delegates |
| 1991 - 1997 | Member, Committee on Legislation, Massachusetts Medical Society |
| 1999 - | Physician Surveyor, National Commission on Correctional Health Care |
| 2002 - | Member, Budget Committee, Society of Correctional Physicians |
| 2004 - | Member, Board of Directors, National Commission on Correctional Health Care |

**Membership in Professional Societies:**

- Middlesex Central District Medical Society
- Massachusetts Medical Society
- Massachusetts Public Health Association
- Society of Correctional Physicians
- American College of Physicians
- American College of Preventive Medicine
- American Geriatrics Society

**Certificates and Licenses:**

- Diplomate, National Board of Medical Examiners
- Diplomate in Internal Medicine, American Board of Internal Medicine
- Diplomate in Public Health and General Preventive Medicine, American Board of Preventive Medicine
- Certificate of Added Qualifications in Geriatric Medicine, American Board of Internal Medicine

- Certificate in Geriatrics, Veterans Administration
- Certified Correctional Health Professional, National Commission on Correctional Health Care
- Medical License, Commonwealth of Massachusetts
- Medical License, State of New Jersey
- Medical License, State of New York

**Honors:**

| | |
|---|---|
| 1988 - | Honorary Advisor, Beijing Medical University |
| 1988 - | Fellow, American College of Physicians |
| 1988 - | Fellow, American College of Preventive Medicine |
| 1989 - | Fellow, American Geriatrics Society |

**Elective Offices:**

| | |
|---|---|
| 1986 -- | Member, Board of Health, Town of Sudbury, MA (Chairman, 3/88-3/89, 3/91-3/92, 3/93-3/95, 3/97-3/98, 3/00-3/01; 3/03-3/04) |
| 2003 – | Treasurer, Society of Correctional Physicians |
| 2005 – 2006 | Member, Executive Committee, Board of Directors, National Commission on Correctional Health Care |

I have been employed in the medical profession and, in particular, in the correctional medical profession, for more than ten years and have personally provided care to many hundreds of inmate/patients housed in prison facilities in Massachusetts In addition, as part of quality improvement and accreditation activities, I have personally reviewed the medical records of many hundreds of inmate/patients housed in prisons, jails, and juvenile detention facilities around the United States

My opinions are based on my review of the documents provided, as well as my knowledge of correctional medicine and complaints of depression, panic attacks, anxiety disorders, and allergies and sensitivities among the incarcerated patient population

**<u>Opinion and Conclusions</u>**

It is my opinion, to a reasonable degree of medical certainty, that the care and treatment provided to Thomas Flannery during his incarceration at the Rhode Island Department of Corrections Adult Correctional Institution (ACI) from January 2006 until his transfer to a Massachusetts correctional facility in April 2006, was appropriate and either met or exceeded the accepted standards It is my further opinion, to a reasonable degree of medical certainty, that the actions of Michael Poshkus, M.D., in his capacity as Medical

Program Director of the ACI, either met or exceeded the accepted standards of care in connection with Thomas Flannery.

It appears from my review of the medical records that Mr. Flannery had multiple incarcerations at the Rhode Island ACI. It appears that when Mr. Flannery was a patient in the Rhode Island correctional system in 2001 he denied any mental health problems and there is no evidence that he complained of an allergy to wool, although he did claim an allergy to *penicillin*.

In a later period of incarceration at the ACI in 2002, Mr. Flannery did indicate at the time of his initial intake medical screening that he suffered from depression for which he had received medication. He again indicated that he had an allergy to *penicillin*, and made no mention of any allergy to wool.

During a March 2004 period of incarceration in the ACI, Mr. Flannery provided a history of past mental health treatment. Mr. Flannery was therefore referred to and seen by a psychiatrist at the ACI, but no specific diagnosis was made, and he was not ordered any treatment.

In a later period of incarceration in November 2004, the plaintiff for the first time provided a history of mental health treatment specifically for anxiety. He stated that he had been prescribed *Valium* and *Xanax* two years before for his condition, but was not currently on any medication. He also claimed for the first time a mental health hospitalization in California apparently sometime in 2003. Mr. Flannery was therefore referred to and seen by a mental health counselor at ACI, and he apparently told this person that he had received *Valium* and *Xanax* while in a California prison two years previously, but was on no current therapy. The mental health counselor made no specific diagnosis, and did not refer the plaintiff for evaluation by the psychiatrist.

The next medical screen performed on Mr. Flannery was during a December 2004 period of incarceration during which Mr. Flannery made no mention of any hospitalization for treatment of any mental health condition. During that December 2004 medical screening examination, Mr. Flannery for the first time reported a history of anxiety dating to his childhood, a history of suicide attempts dating to childhood, and for the first time a reference to substance abuse (cocaine).

At the time of his intake medical screening during the incarceration which is the subject of the pending lawsuit, in January 2006, the records reflect the fact that Mr. Flannery provided a history of having been previously prescribed the medications *Klonopin*, *Remeron*, and *Motrin* during his incarcerations in Massachusetts. He also provided a history of mental health treatment while in prison in Massachusetts. Mr. Flannery did not provide a history of any mental health hospitalizations (as he previously did in referring to a hospitalization in California), nor did he provide a history of previous suicide attempts. Mr. Flannery did confirm the history of substance abuse for cocaine use.

The medical records of the Rhode Island ACI for the plaintiff's January 2006 incarceration reflect the fact that a request for consultation by a psychiatrist was made by a nurse at the time of the plaintiff's medical screen. I find this to be proper and appropriate and within the standard of care.

The nurse who undertook the medical screen had no way to independently confirm the medications mentioned by Mr. Flannery as having been prescribed to him during his Massachusetts incarceration, and so it was proper and appropriate, and within the accepted standard of care, for the nurse to have made a referral for a psychiatric consultation at that time.

On March 16, 2006, the records reflect the fact that the plaintiff was seen by a medical physician, Dr. Edoro, who saw the plaintiff for complaints of tooth pain, a facial rash, and a possible wool allergy. Dr. Edoro wrote orders for *Motrin* and *Erythromycin*, as well as for a cotton blanket. A true allergy to wool is quite rare, and it is my opinion, to a reasonable degree of medical certainty, and based on my education, training, and years of experience in the field of correctional medicine, that the plaintiff's complaint was more consistent with a sensitivity to minimally-processed wool than to an allergy to wool. In any event, the medical records reflect the fact that a cotton blanket was ordered for Mr. Flannery in a timely fashion.

Mr. Flannery's medical records also reflect the fact that shortly after his arrival to the Rhode Island ACI he was placed in segregation. I find this to be relevant to the plaintiff's claims in this lawsuit because prisoners who are segregated from the general inmate population are likely to be more frequently checked on by healthcare professionals than other inmates.

The medical records also reflect the fact that between January 25, 2006, and April 2006, when Mr. Flannery was transferred to a Massachusetts correctional facility, he was seen on at least four occasions by a psychiatrist and once by a social worker. On January 30, 2006, for example, the plaintiff was seen by a psychiatrist, Dr. Bauermeister, after an apparent attempt to see the plaintiff on January 27, 2006. The time period within which the plaintiff was seen, (three business days after arrival at the ACI), was well within the expected norm and the standard of care for incarcerated persons. It was, in fact, far more timely than in the non-incarcerated general population seeking an outpatient appointment with a psychiatrist.

The plan of care formulated by the psychiatrist on January 30, 2006, included prescription of the medication *Wellbutrin*, and the plaintiff was advised that when he was experiencing a panic attack, he was to immediately request care. The nursing staff was instructed to provide immediate treatment for a documented panic attack. This was reasonable, proper, appropriate, and within the accepted standard of care because of the very unclear history from the patient as to his claimed disorders. It is my experience that individuals who suffer from panic disorder (more commonly women) typically can be specific about what it is that triggers the attacks. It was very reasonable of the psychiatrist to want to document the occurrences in this case.

It is my opinion, to a reasonable degree of medical certainty, and based on my education, training, and years of experience in the field of correctional medicine, that some inmates may seek the prescription of *Klonopin* (a controlled substance) and *Remeron*, not for their proper medical indications, but rather for their common side effects, which make patients less aware of their surroundings Some inmates find these side effects especially desirable when they are confined to segregation

It is my opinion, to a reasonable degree of medical certainty, that the psychiatrist's plan of care, including the prescription of *Wellbutrin*, was a perfectly feasible and reasonable one based upon the uncertainty of the plaintiff's disorders, his substance abuse history, and the inconsistencies in his mental health history.

The medical records reflect the fact that Mr. Flannery started receiving the *Wellbutrin* on February 1, 2006, but started refusing to take the *Wellbutrin* on February 8, 2006 Regardless, he was seen again by the same psychiatrist on February 13, 2006, during which time the plaintiff offered complaints that the *Wellbutrin* did not help with his panic attacks; however, the records also reflect the fact that the plaintiff was unable to offer a single instance of having reported an occurrence of a panic attack, as he had been instructed to do at the time of his previous psychiatric consultation

The plaintiff also complained of insomnia at that time, but he refused to participate in a sleep study which was offered to him

The plaintiff was seen again by the same psychiatrist on February 27, 2006, only fourteen days later He was again told to contact the nurses when he was experiencing a panic or anxiety attack so that there could be objective data upon which to base an accurate diagnosis. Again, though, the record reflects the fact that Mr Flannery never did so

The plaintiff was seen on March 13, 2006, by a social worker. Following that March 13 visit, the social worker referred Mr. Flannery to the psychiatrist for further care The medical records reflect the fact that the psychiatrist may have attempted to see Mr. Flannery the following day, March 14, 2006, and also that the plaintiff was seen on March 27 by the same psychiatrist who again appears to have questioned the validity of Mr. Flannery's complaints, none of which had ever been independently or objectively verified, as requested.

Mr. Flannery was seen again by the same psychiatrist at the ACI on March 28, 2006, at which time he stated that he was anxious and depressed The psychiatrist discontinued the *Wellbutrin* and prescribed *Elavil* instead *Elavil* is a medication which is also used for the treatment of depression and panic disorders, and I find, to a reasonable degree of medical certainty, that the prescription of *Elavil* at that time was an appropriate choice and met or exceeded the applicable standards of care. The plaintiff soon thereafter left the Rhode Island correctional system

During his period of incarceration at the Rhode Island ACI, Mr Flannery continued to decline sleep monitoring and never sought out a nurse or other healthcare provider to witness a panic or anxiety attack There was, in essence, no confirmation or objective proof of panic attacks upon which to change the psychiatrist's plan of care It is my medical opinion, to a reasonable degree of medical certainty, that the care and treatment provided by the healthcare providers at the ACI met or exceeded the applicable standards of care Accordingly, it is my opinion, to a reasonable degree of medical certainty, that the actions of Dr Michael Poshkus, in his capacity as the Medical Program Director of the ACI, met or exceeded the applicable standards of care relative to Thomas Flannery

It is my professional medical opinion to a reasonable degree of medical certainty that the care and treatment provided to Thomas Flannery throughout the period of his incarceration at the Rhode Island ACI in 2006 met or exceeded the applicable standards of care

Sincerely,

Donald C Kern

Donald C Kern, MD, MPH, CCHP