BARRY W. WALL, M.D.
184 WATERMAN STREET
PROVIDENCE, RHODE ISLAND 02906

(401) 273-1010

July 23, 2007

John B. Moretta, Esq.
Roberts, Carroll, Feldstein & Pierce, Inc.
10 Weybosset Street
Providence, Rhode Island 02903-2808
tel 401-521-7000
fax 401-521-1328

**RE: Flannery v. Bauermeister, Ph.D., M.D.**
**United States District Court, District of Rhode Island,**
**civil action # 06-399S**
**Your file No. 70-71**

Dear Atty Moretta:

Pursuant to your request, I have reviewed the information you provided in the above-named case to assess whether Dr. Martin Bauermeister was deliberately indifferent to an inmate's serious medical needs and to assess the overall care that he provided. The case arises from the allegation by Mr. Thomas Flannery that Dr. Martin Bauermeister and others at the Rhode Island Department of Corrections (RIDOC) failed to render appropriate medical care during his sixth detention at the Adult Correctional Institutions (ACI), which occurred from January 2006 to April 2006.

**SUMMARY OF OPINIONS**

1. In my opinion, based on the information available to me, the level of care that Dr. Bauermeister provided to Mr. Flannery was not deliberately indifferent to his medical needs.
2. In my opinion, based on the information available to me, Dr. Bauermeister's medical treatment of Mr. Flannery was within the correctional standard of care.
3. In my opinion, based on the information available to me, Mr. Flannery's lack of full participation in the treatment that was offered to him at the ACI likely contributed to his self-reported symptoms.
4. In my opinion, based on the information available to me, factors other than Mr. Flannery having anxiety contribute to Dr. Bauermeister's analysis and treatment of him.

**SOURCES OF INFORMATION**

I reviewed the following information that you provided:

1. Copy of amended complaint prepared by Mr. Flannery, pro se, dated 3/26/2007;
2. Six medical and/or mental health requests prepared by Mr. Flannery, dated from 2/6/2006 to 3/12/2006;
3. Two request forms, one to Lt. Barney, dated 2/9/2005 [2006?], and one to Lt. Hanley, dated 1/30/2006, prepared by Mr. Flannery; and,

4. Mr. Flannery's ACI medical records of his six detentions there; these records are dated from 11/13/2001 to 3/28/2007 They include Medical Entrance Screens, non-mental health physician and nursing notes, mental health notes; medication logs; laboratory data; and the like.

## SYNOPSIS OF MR. FLANNERY'S COMPLAINT AND REQUEST FORMS

(Some of the medical/mental health request slips are Xeroxed poorly and are difficult to read.)

On 1/26/2006, Mr. Flannery "submits a medical request to obtain his prescribed medication, but receive[d] no response."

On 1/30/2006, Mr. Flannery's request for Klonopin (anti-anxiety medication that can be a medication of addiction) and Remeron (antidepressant medication) were "refused by [Dr. Bauermeister] on the basis that [Mr. Flannery] has not demonstrated or proven his need for the medication prescribed by the other state's [Department of Correction]."

At least six times between 1/30/2006 and 3/12/2006, Mr. Flannery requested grievances, submitted medical requests, and told others about "his denial of prescribed medical care." On 1/30/2006, he wrote to Lt. Hanley, "I'm familiar with 42 USC 1983 and have tied up [correctional officers] and others up in litigation so please supply requested grievance to clear the way for such action."

From on or about 2/01/2006 to 4/18/2006, Mr. Flannery was placed in segregation "as a result of a prison disciplinary matters (sic), i.e., threatening a court officer, destroying state property, refusing direct orders of officers, as well as er[r]atic behavior, to which he is often physically ill (sic)." On 2/12/2006, he informed "HCS" that he is "having chest pains, which he believes is induced from anxiety attacks from the lack of his medication."

## SYNOPSIS OF ACI MEDICAL RECORDS

**Synopsis of assessments and known past treatment prior to the January 2006 detention**: The medical records tell the following story of Mr. Flannery's illness and treatment outside of RIDOC prior to January 2006. He reported depression in 2002 and anxiety in 2004. There is a 11/29/2004 notation that he received treatment in a California prison in 2002. He reported past treatment with Seroquel (antipsychotic medication that can also treat anxiety), trazodone (medication use to help with sleep), Elavil (antidepressant medication with anti-anxiety properties), and Valium and Xanax (anti-anxiety medications similar to Klonopin, and as such can also be drugs of abuse).

Every time Mr. Flannery was obtained at the ACI, he always got a screening evaluation. At times he received a psychiatric referral, at other times a mental health (nonpsychiatric) referral, at times both, and at other times he did not receive mental health referrals at all. The type of referral that he got depended on his mental state at the time of the screenings. Sometimes he reported long-standing anxiety from childhood (e.g. on 12/27/2004), but at other times he reported no mental health problems (e.g. on 11/13/2001)

**Synopsis of medical records of the January 2006 to April 2006 detention:**

*Information obtained from Medical Entrance Screening* On 1/25/2006, Mr. Flannery received his Medical Entrance Screen. He reported being on Klonopin 1 mg per day in divided doses; Remeron 60 mg per day; and Motrin 800 mg. He was assessed as being appropriate for the general population, and was referred to mental health and psychiatry.

*Information obtained from medical and mental health progress notes*: Dr Bauermeister evaluated Mr. Flannery five days later, and wrote, "[Mr. Flannery] is argumentative and demanding. He claimed to have panic attacks and nothing works Start Wellbutrin 100 mg [at bedtime]." In this note, Dr. Bauermeister underlined the words depression and panic attacks Based on the underlining of these words, it appears to me that Dr. Bauermeister prescribed Wellbutrin for depression, yet had concerns about whether Mr. Flannery was having bona fide panic attacks, as he wrote: "For medically documented panic attacks give Vistaril (antianxiety medication) 50 mg not to exceed two doses in 24 hours without referral back for review. I told [Mr Flannery] to report physical symptoms to [correctional officer], not simply to say 'panic attack.'"

On 2/13/2006, Dr Bauermeister wrote that Mr. Flannery was "complaining that Wellbutrin does not help with his panic attacks. He did, however, not a single time report such an attack [or] come to nursing and get the prescription I have [ordered] him. He also complained about insomnia but refused sleep study. His mental status was entirely normal. No signs of panic, anxiety, sleep deprivation, major mental illness." Later that same day, Dr. Bauermeister also wrote, "[Mr. Flannery] is on K mod (a segregation unit) due to making threats."

On 2/27/06, Dr Bauermeister wrote, "[Mr. Flannery] had been instructed specifically to report physical symptoms of panic attacks said that he would be seen by nursing staff and have his vital signs taken to document I also had ordered sleep monitoring which [he] refused. He is on antidepressant Wellbutrin 100 [milligrams at bedtime] and [as needed] order of Vistaril for panic attacks."

On 3/13/06, a social worker whose name is illegible wrote that Mr Flannery had put in a slip, and therefore was being seen. He indicated "both medical and [mental health] issues. He stated that he has been feeling [increasingly] anxious, was unable to stop moving and shaking legs. He stated he has been unable to sleep which causes him additional anxiety." He signed a release of information for the Massachusetts Correctional Institute-Concord He then explained why the Wellbutrin was not working. The social work then referred him to Dr. Bauermeister. Dr. Bauermeister evaluated him the next day, writing the word "reviewed" in the chart.

On 3/27/06, Dr Bauermeister again met with Mr Flannery, and wrote that he was "still complaining [of] insomnia and anxiety attacks. However, he has never reported to nursing staff! I do have an order for Vistaril in case of documented anxiety attacks. He did refuse sleep monitoring. We have no confirmation of treatment in Massachusetts [illegible] today."

The last note by Dr. Bauermeister was on 3/28/2006. He noted that Mr. Flannery appeared "anxious, depressed-I shall discontinue Wellbutrin 100 [milligram] and replace it with Elavil [200 mg per day in divided doses]."

*Information obtained from medical request prepared by Mr. Flannery, dated 2/10/2006*: Mr. Flannery wrote, "Dr. Bauermeister.... refused to give me my doctor ordered Klonopin and Remeron he gave the Wellbutrin I don't want it as it doesn't work I'm having severe panic attacks and constant anxiety..."

*Information obtained from medication order sheets and medication logs*: Nursing was under Dr. Bauermeister's order to administer 50 mg of Vistaril "for medically documented panic attacks," including changes in vital signs. The order additionally states "do not give more than two doses in 24 hours without referring back to Dr. Bauermeister." There is no record of Mr. Flannery ever taking this medication, even though it was ordered to be given as needed.

The February 2006 medication sheet indicates that Mr. Flannery took Wellbutrin 100 mg at bedtime from 2/1/2006 to 2/10/2006 After that, he consistently refused to take Wellbutrin, from 2/12/2006 to 3/10/2006.

Mr. Flannery began taking Elavil on 3/29/2006, 3 times a day, pretty much every day, until he was released from the facility

**DISCUSSION**

**Summary of opinions**: My opinions are limited by my not having personally examined Mr. Flannery.

1. In my opinion, based on the information available to me, the level of care that Dr. Bauermeister provided to Mr Flannery was not deliberately indifferent to his medical needs.
2. In my opinion, based on the information available to me, Dr. Bauermeister's medical treatment of Mr. Flannery was within the correctional standard of care.
3. In my opinion, based on the information available to me, Mr. Flannery's lack of full participation in the treatment that was offered to him at the ACI likely contributed to his self-reported symptoms.
4. In my opinion, based on the information available to me, factors other than Mr. Flannery having anxiety contribute to Dr. Bauermeister's analysis and treatment of him

**Discussion**: The medical record indicates that Mr. Flannery reported depression and panic attacks to Dr. Bauermeister, but that Dr Bauermeister had concerns about the veracity of his account of panic attacks (although he documented and supported the need for treatment of depression) Dr. Bauermeister wanted confirmation of panic symptoms, which, in my opinion, is understandable given that Mr. Flannery reportedly appeared "argumentative and demanding" about his medications, and that there must be a consideration of malingering or symptom exaggeration in a correctional population. Dr Bauermeister prescribed Vistaril, an anti-anxiety medication, for immediate symptom management of anxiety, and instructed Mr. Flannery to report to nursing any physical symptoms. The records indicate that Mr. Flannery never did so, instead submitting a number of slips and getting into a struggle with the institution in general, and Dr Bauermeister in particular, about whether Dr. Bauermeister would prescribe medications that Mr Flannery wanted to take. He was upset that Dr. Bauermeister did not agree to prescribe these medications, and equates "deliberate indifference" with Dr. Bauermeister's decision to watch and wait to gather additional information before deciding to treat. Ultimately, however, Dr. Bauermeister changed Mr Flannery's antidepressant medication to Elavil, which has both antidepressant and anti-anxiety properties, in response to his observation that Mr. Flannery had ongoing nonspecific anxiety symptoms. There was never confirmation that Mr Flannery had a bona fide Panic Disorder, in part because he did not participate with Dr. Bauermeister's request to present when he believed he was experiencing symptoms Medical records were requested from Massachusetts, but based on the fact I did not receive them, I assume that the ACI did not receive them.

In my opinion, based on the information available to me, the level of care that Dr Bauermeister provided to Mr. Flannery was not deliberately indifferent to his medical needs. This opinion is based on the following reasons:

1 During the sixth detention, Mr. Flannery was evaluated by Dr. Bauermeister on at least five occasions within eight weeks. The frequency of such appointments indicates that Dr. Bauermeister was attentive to Mr. Flannery's case. He also reviewed the case on 3/14/2006 after a social worker informed him that Mr. Flannery had complaints on 3/13/2006, which suggests concern about the case rather than indifference.

2. The progress notes indicate that Dr Bauermeister recorded relevant data, and then analyzed it and developed a treatment plan in response to his case formulation. The case formulation changed over time, in response to Mr Flannery's report of symptoms as well as his lack of response to, and lack of participation in, treatment. In contrast to Mr. Flannery's complaint that he received "no response" to a medical request to obtain his prescribe medication, Dr. Bauermeister met with him and prescribed medication on 1/30/2006. Further, Dr. Bauermeister changed the medication on 3/28/2007 in response to his observation that Mr. Flannery remained depressed and anxious. This suggests concern and involvement, rather than in difference, to Mr. Flannery's request for treatment.
3. Dr Bauermeister always treated, and never had clinical questions regarding, Mr. Flannery's report of depression. This indicates that he was not dismissive of Mr. Flannery's self-report of symptoms.
4. It is clear from the notes that Dr. Bauermeister questioned whether Mr. Flannery had bona fide panic attacks. The notes indicating that Mr. Flannery was "argumentative and demanding," imply, in my opinion, that Dr Bauermeister wondering whether Mr. Flannery's request for medication was related more to his personality style. Because there should always be a consideration of malingering in a correctional setting, Dr. Bauermeister, in my opinion, understandably wanted to have documentation of a true panic attack before diagnosing and proceeding with formal treatment of a Panic Disorder. One way of getting that information was to assess for symptoms, and Dr. Bauermeister instructed Mr. Flannery to bring these symptoms to the attention of the system when he was actually having them, which Mr Flannery did not do. Another way to get that information was to request outside records, and the progress notes indicate that these were requested
5. Anti-anxiety medications like Klonopin can be used as an illicit currency in correctional settings, so some correctional settings have a high threshold for prescribing them. A reluctance to prescribe them in certain cases is, therefore, within the standard of care, because it would not be therapeutic to prescribe such medications for everyone who asks for them Not readily prescribing Klonopin because the treating physician is concerned that the patient may not truly having the symptoms he reports, and wanting to have documented symptoms before prescribing it does not constitute, in my opinion, a calculated indifference on the part of a treating physician
6. Even though Dr. Bauermeister questioned the veracity of Mr Flannery's self-report of panic attacks, he still made Vistaril available to him and instructed him to report the physical symptoms of anxiety to the correctional officers said that he could be evaluated by nursing. That is, he instructed Mr. Flannery what to do in the event of experiencing a true panic attack, and had a medication available to him to lessen his anxiety in the moment. Further, he instructed the nurses to not prescribe more than two doses of Vistaril to Mr. Flannery in a 24-hour period without speaking with him directly. Providing these instructions to Mr Flannery, ordering a medication to treat symptoms if they emerged, and educating nursing staff about what to do – including notifying him as the physician – constitute active treatment efforts by Dr. Bauermeister.
7. Even though Dr Bauermeister questioned the veracity of Mr. Flannery's self-report of panic attacks, he assessed Mr. Flannery to have anxiety, and formally discontinued Wellbutrin and then started Elavil, a medication used to treat depression and anxiety, to treat his ongoing self-reported symptoms. Making a medication change in an attempt to treat his depression and anxiety, even during the struggle that emerged over the other medications, indicates that Dr. Bauermeister took action as thought it was indicated

In my opinion, based on the information available to me, Dr. Bauermeister's medical treatment of Mr. Flannery was within the correctional standard of care. This opinion is based on the following reasons:

1. Every time Mr Flannery was obtained at the ACI, he always got a screening evaluation as a part of the ACI's systematic evaluation program to detect persons with mental illness. In response to

this systematic evaluation process, Mr. Flannery was evaluated by mental health professionals, when indicated, during his detentions. This type of assessment is within the standard of care.

2. Dr. Bauermeister evaluated Mr. Flannery, a person endorsing depression and anxiety without suicidal thoughts, at least five times within eight weeks. This frequency is with the standard of care.
3. Dr. Bauermeister treated Mr. Flannery's depression with Wellbutrin, an antidepressant medication. This medication choice is within the standard of care.
4. Dr. Bauermeister did not treat Mr Flannery for panic disorder because there was no evidence that he had it. He developed a plan to assess whether he had bona fide panic disorder, as noted above.
5. Although Vistaril is not used to treat panic disorder per se, it is reasonable to use this medication to symptomatically treat symptoms of anxiety pending documentation of panic attacks.

In my opinion, based on the information available to me, Mr Flannery's lack of full participation in the treatment that was offered to him at the ACI likely contributed to his self-reported symptoms. This opinion is based on the following reasons:

1. Dr. Bauermeister's notes on 2/13/2006, 2/27/2006 and 3/27/2006 indicate that Mr. Flannery did not comply with doctor's orders to report to nursing whenever he had physical symptoms. Not reporting symptoms (if he had them) stymied Dr Bauermeister's efforts to diagnose Mr. Flannery with Panic Disorder.
2. The medical records indicate that Mr. Flannery only took about 10 doses of Wellbutrin. After that, he began to refuse it Without giving it a full course, it was not possible for Dr. Bauermeister to assess whether Wellbutrin could improve Mr. Flannery's mood.
3. Dr. Bauermeister's notes on 2/13/2006, 2/27/2006 and 3/27/2006 indicate that Mr Flannery refused sleep monitoring.

In my opinion, based on the information available to me, factors other than Mr. Flannery having anxiety contribute to Dr. Bauermeister's analysis and treatment of him. This opinion is based on the following reasons:

1. Dr. Bauermeister's note on 1/30/2006 indicated that Mr Flannery was "argumentative and demanding," and his notation that Mr. Flannery reported having panic attacks for which "nothing works" is consistent with a black and white style of thinking. These notations are consistent with a personality overlay that may color Mr. Flannery's perception of his experiences, including Dr. Bauermeister's reasonable skepticism about whether he needed Klonopin.
2. On 2/13/2006, Dr. Bauermeister's notation of Mr. Flannery's being in segregation due to his "making threats" is consistent with a personality problem. Being threatening to others is not a symptom of a panic attack
3. Mr Flannery refused offered medications. Such behavior is consistent with an attempt to control the treatment, rather than to participate in it. It can also be consistent with a maladaptive personality style.
4. "Threatening a court officer, destroying state property, refusing direct orders of officers, as well as er[r]atic behavior" are not criteria for panic disorder. They are more consistent with a personality problem rather than an anxiety or depressive disorder.
5. Intimating that one's requests require action to prevent a lawsuit is consistent with a controlling style: "I'm familiar with 42 USC 1983 and have tied up [correctional officers] and others up in litigation so please supply requested grievance to clear the way for such action."

**MY QUALIFICATIONS**

A copy of my résumé is appended to this report. The above review is based on my knowledge of jails and prison systems.

**COMPENSATION**

I bill at a flat rate of $325 per hour.

**MY TESTIMONY WITHIN THE PAST FOUR YEARS**

| | date | type | | name of case | venue | on behalf of |
|---|---|---|---|---|---|---|
| 1 | 3/21/03 | Hearing | PFI | in re David Lasseque | Providence District/Superior | MHRH |
| 2 | 8/31/05, 1/25/06, 1/30/06 | Hearing | specialized services | in re Ronald Posner | Prov. Superior/ Judge Dimitri | MHRH |
| 3 | 6/12/06 | Hearing | Civil commitment | In re Jason Sam | Prov. Dist/ Judge Derobbio | MHRH |
| 4 | 12/18/06 | Hearing | CST | State v Salgado | Prov. Superior/ Judge Indeglia | MHRH |
| 5 | 5/4/07 | Trial | Insanity | State v. Fuller-Balletta | Prov. Superior/ Judge McGuirl | Prosecution |

Thank you for this consultation. Please contact me if you have any questions

Barry W Wall, M.D.
Board-Certified in Adult & Forensic Psychiatry
Clinical Associate Professor of Psychiatry, Brown Medical School
Distinguished Fellow, American Psychiatric Association