UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS FLANNERY | ) | |
| Plaintiff | ) | |
| v. | ) | C. A. NO. 06-399S |
| DR. BAUERMESTER et al | ) | |
| Defendants | ) | |

# PLAINTIFF'S OPPOSITION TO DEFENDANTS "UNDISPUTED FACTS" AND THEIR JOINT MOTION FOR SUMMARY JUDGEMENT

Defendants DR. BAUERMEISTER and POSHKUS, now moving for summary judgement pursuant to Fed. R. Civ. P. 56, include their "undisputed facts" in support thereof.

Plaintiff, in this opposition and to correct the pleading, which term "undisputed" exists, remind defendants that it is an adjective defining it as not questioned or challenged, as well as uncontested. Black's Law Dictionary, Eighth Edition, page 1562. To the contrary, defendants' recitation of the facts is questioned and challenged by plaintiff, as we shall see in this argument.

As to the "facts" as stated by defendants, Black's Law is helpful here too, as it is defined as something that actually exists; an aspect of reality. **Ibid.** page 682. Defendants proffer nothing less than their fallible construence of events that are, indeed, in question.

Begining at the outset of defendants STATEMENT OF UNDISPUTED FACTS, II, ¶ 4, it is specious to state that the screener did not have a way to independently confirm the plaintiff's medications as prescribed. Simply done in the 21st Century, a telephone call, or a FAX (most vehicle routinely used between penal institutions when communicating), would have resolved any doubt of plaintiff's prescription.

In the preceding, ¶ 3, defendants clearly state that "The medical records also reflect the fact that Plaintiff provided a history of mental health **treatment** while in prison in Massachusetts" (emphasis in the original). Just prior to this admission, defendants state that "Mr. Flannery provided a history of having been previously prescribed the medications **Klonopin, Remeron**, and also **Motrin** during his previous incarcerations in Massachusetts" (emphasis in the original). While defendants admit to knowing that the plaintiff did not tell them of his prior hospitalization (as, they say, he did previously), nor providing a history of suicide attempts.

Clearly, the defendants knew, or had to know, that the plaintiff's prescribed medications are legitimate and properly dispensed, since it is obvious to a reasonable person that they possess a medical record of information deliberately withheld here.

Plaintiff further alleges that withholding his prescribed medications is done with the intent to institutionally economize, nothing more, but without concern for his health and well-being.

In ¶ 5, defendants allude to plaintiff's placement in a segregated setting, shortly after his arrival in Rhode Island. Speciously, we are pointed to plaintiff's Amended Complaint, ¶ 25, by the defendants. Glossing over the relenvancy of the conditions responsible for plaintiff's segregation, is the fact that he requests, in writing, his properly-prescribed medication, to no avail. See Amended Complaint, ¶ 14, 16, 17. Plaintiff persists in his requests and advises his medical providers that he is suffering from chest pains, which he believes is induced from anxiety attacks and the lack of his medications. Amended Complaint, ¶ 19, 20, 21, 23, 24, to which lands him in segregation, where he remains until the day of his return to Massachusetts, ¶ 25. It is supremely notable that plaintiff is returned to his medications upon said arrival at MCI Concord <u>on the same date</u> (emphasis added).

In ¶ 7 of defendants Undisputed Facts, plaintiff was "seen" by DR. BAUERMEISTER on 01-30-06, and again on 02-13-07, ¶ 12. It is notable that two weeks lapsed between the events. In the former instance, plaintiff is prescribed **Wellbutrin** 100mg., although plaintiff voiced his objection and stated that he did not do well on the drug.

It is notable here too, that DR. BAUERMEISTER misses an opportunity to resolve the issue of medications by simply placing a call, or FAX, to Massachusetts authorities to confirm plaintiff's requests.

In desperation, plaintiff accepts the medication, but then discontinues the Wellbutrin regimen within a week for lack of

for its lack of effect in relation to his panic attacks, a primary reason for discontinuing the drug. ¶ 10.

Plaintiff challenges defendant DR. BAUERMEISTER of his allegation that he advised him of what to do in the event of a panic attack notwithstanding DR. BAUERMEISTER having instructed his subordinates of same. ¶ 8.

Plaintiff challenges defendant DR. BAUERMEISTER alleging that "some inmates" seek the prescription of **Klonopin** (a controlled substance) and **Remeron, not** for their proper medical indications, but rather for their common side effects, which makes patients less aware of their surroundings. Some inmates find these side effects espcially desirable when they are confined to segregation, as in the case of Mr. Flannery." See Defendants' Expert Reports. ¶ 9.

As to the preceding, defendant DR. BAUERMEISTER's comments are outrageous in the least. "Undisputed facts," indeed! Plaintiff's challenge is to have the defendant produce those "in the correctional medical community" to come forward with this innuendo or "know[ing]," so that it may be placed in the record under oath. This tact by defendants simply demonstrate their propensity to be uncooperative in the litigation process, as well as a misguided attempt to influence this Court through intimation and derogatory remarks of a disparaging nature.

DR. BAUERMEISTER is correct about the segregation unit. It is undesirable, as well as nearly bereft of people in general. His food servers are in attendance thrice daily, but the plaintiff will assert he saw no one during this period.

In ¶ 11, the plaintiff again challenges DR. BAUERMEISTER's allegation that plaintiff never offered any evidence of having panic attack. See, i.e., Plaintiff's Amended Complaint, ¶¶ 19, 20, 21, 23 24.

Another questionable tact employed by the defendant, DR. BAUERMESTER, is contained in ¶ 13. It is no less an admission by this medical professional that he is willing to discredit a patient by asking that he prove a negative amounting to the veracity of an inmate versus a prison guard, nurse or doctor, as to having panic attacks or not having resported them. It is a tactic not rationally employed in a doctor-patient relationship, especially when the patient suffers from a mental illness.

In ¶ 14, DR. BAUERMEISTER's substitution of Wellbutrin only confirms that plaintiff spoke the truth as to the drug not being effective, as he did previously, and now states that the Elavil shall have the same effect, having been prescribed this drug previously as well. Here too, DR. BAUERMEISTER simply misses another chance to confirm plaintiff's medications, an act not considered by plaintiff to be unintentional. It is also notable in this statement that plaintiff did state that he was "anxious and depressed."

Finally, as to defendants submission of the "Undisputed Facts," (sic), the question of remedy exaustion is one of law and for this Court to decide. Defendants are better-suited to delve into recent decision dealing with the PLRA and rethink this claim. Plaintiff deals with this elsewhere in this opposition.

There are genuine issues of material facts of substantial controversy and have been, in good faith, controverted by the plaintiff. As such, there exists issues in dispute, negating summary judgement for the defendants.

"Motions for summary judgement must be decided on the record as it stands, not on a litigant's versions of what the facts might someday reveal." **Maldonado -Denis v. Castillo-Rodriguez**, 23 F.Supp. 576, 581 (1st Cir. 1994); also **Roche v. John Hancock Mut. Life Ins. Co.**, 81 F.3d 249, 253 (1st Cir. 1996).

Plenary review is afforded to the entry of summary judgement on the civil rights claim, see **Smith v. F.W. Morse & Co.**, 76 F.3d 413, 428 (1st Cir. 1996), a court may grant summary judgement if the nisi prius roll discloses no genuine issue of material fact and if, viewing the entire record in the light most flattering to the nonmovant, the proponent demonstrates its entitlement to judgement as a matter of law. See **McCarthy v. Northwest Airlines, Inc.**, 56 F.3d 313, 315 (1st Cir. 1995) (collecting cases); also Fed. R. Civ. P. 56(c); **Roche**, supra.

PART TWO: SUMMARY JUDGEMENT

Defendants DR. BAUERMEISTER and POSHKUS, in their Introduction Part I, ¶ 3, again request that judgement enter in their favor "based on the 'undisputed' (sic) fact that Plaintiff failed to disclose any expert witnesses required to prove and support his claims in this matter."

The spurious assertion that the plaintiff did not disclose any expert **required** to prove and support his claim is a far reach to say the least.

While defendants also claimed and hinged their argument on alleging that plaintiff failed to exaust his remedies in their discovery pleadings. This assertion is as specious as mandating expert testimony, written at that, to effectively prove one's complaint. It is simply not so.

Returning to the exaustion requirement in page 5, ¶ 4, of this opposition, as to the PLRA, **Jones v. Bock**, 127 S.Ct. 910, argued in 2006, but decided on January 22, 2007, is the recent case law referred to by plaintiff. In it, the Chief Justice held that the prisoner-plaintiff is not required to exaust under PLRA, as he is also not required to specially plead or demonstrate exaustion in his complaint, which abrogated no less than four court of appeals cases of F3d vintage. Further, that failure to exaust is better viewed as an affirmative defense. **Id.** 127 S.Ct. at 912.

Further to the preceding, Chief Justice Roberts also held that complaince with PLRA's exaustion requirement as to some, but not all, claims does not warrant dismissal of entire action, which render 42 U.S.C. § 1997e(a) as inconsistent when distinguishing the respondent's reading of the statutebetween "claims" or "actions." **Id.** 127 S.Ct. at 913.

Further, as to the instant case, "Prison officials may not take unfair advantage of the exaustion requirement of PLRA, and a remedy becomes unavailable if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exausting." **Kaba v. Stepp**, 458 F.3d 678, 684 (7th Cir. 2006)

In a final word on exaustion of remedies under PLRA, let us not forget that the plaintiff attempted twice to grieve the issue of his withheld medications, but is denied for reasons that are specious at least. See, Amended Complaint, ¶¶ 16, 17, page 4.

The fact that Lieutenants Hanley and Barney, originally named as defendants in this civil action, but stipulated for dismissal when defendant WALL assumed responsibility, misled plaintiff in the process of institutional medical complaints, deliberately, with intent of forethought, is evidence of prison officials taking unfair advantage of the exaustion requirement.

The fact that the grievance officer, assumedly Lt. Hanley, stated that medical is not grievable, but that the doctor's decision "is fine," is evidence that this official knew of the doctor's decision and was prepared for the encounter with the plaintiff. This too, reasonably suggests that plaintiff was deprived his right to grieve, leaving him to ferret out other choices to obtain his prescribed medication to a deteriorating condition, to which were foreclosed when segregated.

The fact that the plaintiff repeated his request for the grievance a second time, on 02-09-06, while isolated, where Lt. Barney denied said request for the same reason as stated by Lt. Hanley, reasonably suggests that this officer knew of the previous request, especially when echoing Lt. Hanley. His mental state declining further, the plaintiff begins to file medical requests complaining of chest pains, anxiety attacks and general malaise. Amended Complaint, ¶ 19, 20, 21, 23, 24, and 25.

Defendants offer submission of "expert Kern and Wall," in support of their practices and policies relative to the plaintiff's claims. Lest we not forget, neither one has ever examined or consulted with the plaintiff. Never.

Plaintiff is unsure of Dr. Wall, who states that the conclusions he makes are within a reasonable degree of cetainty, as to his relationship with defendant WALL in this matter. The plaintiff challenges defendants to respond to this degree of uncertainty plaintiff has and whether Dr. Wall if related to the defendant of the same name.

Unsure too, is the effect of the experts, since they may conclude with a reasonable degree of certainty, but do such conclusions lack that "aspect of reality" that plaintiff spoke to in defining a fact?

Positive the plaintiff is that the experts shall no doubt bill out at $325.00 hourly, Dr. Wall's estimate in his Opinion, page 7. So much for the plaintiff cautionary words as to both judicial and institutional economy. While state actors and their counsel seemingly qualify for unlimited funds, the plaintiff has no doubt that he does not. It is extremely doubtful that plaintiff's request for funds to depose defendants would have been allowed by the Clerk-Magistrate, or the presiding judge.

The defendants, in their Case Background, II, recite the fact that plaintiff brings an Eighth Amendment claim in the matter. To that add a Civil Rights claim pursuant to 42 U.S.C. § 1983, as stated in the Amended Complaint.

Plaintiff also adds the fact that he has claimed a fundamental right, derived from natural law, triggering strict scrutiny in a determination of whether the law applied in this case violates the Due Process Clause of the Fourteenth Amendment (annexed and applicable to the states by the Eighth Amendment's ban of cruel and unusual punishments).

Strict scrutiny in the analysis of the fundamental right compels an opponent to establish an overpowering interest that justifies and necessitates the law in question.

In **Welch v. Paicos**, 66 F.Supp.2d 138, 166 (D. Mass. 1999), the court concluded that "The doctrine of substantive due process forbids state action that would offend the Constitution regardless of the procedure regulating it." **Amsden v. Moran**, 904 F.2d 748, 753-54 (1st Cir. 1990).

Distinct from its procedural kin a substantive due process inquiry focuses on "what" the government has done, as opposed to "how" and "when" the government did it. **Amsden**, supra.

Clear and convincing evidence must be produced by an opponent that no such right exists. There must be proof that infringement upon the rights serve a compelling interest. The infringement must be the least possible breach serving the compelling interest. Implicating equal protection, the clear and convincing evidence standard of evidence must be demonstrated. **Lindsey v. Normet**, 405 U.S. 56, 77 (1972); **Griffing v. Illinois**, 351 U.S. 12, 18 (1956) (Equal Protection forbids state from imposing additional burdens on litigants in an arbitrary and capricious manner, U. S. Const. Amend 14). In the case at bar, defendants have not done so.

Defendants briefly state in their Standard of Review, III, that the plaintiff has not demonstrated any issues of material fact in his Complaint, nor is there sufficiency of the same sort contained in defendants submission of Rule 12(b)(6) [Dismissal only].

To the contrary, plaintiff reasserts and incorporates his counter argument at the outset of this Opposition, pages 1-6, by reference as if fully set forth herein.

Defendants, albeit all too brief in the preceding, apparently reserved their artillery barrage for their Argument and Analysis, IV, which could have been entitled Deliberate Indifference Inquiry. They begin with **Estelle v. Gamble**, 429 U.S. 97, 106 (1976), where the court stated that only sufficiently harmful omissions or acts evidence the standard of deliberate indifference to serious medical needs.

**Trop v. Dulles**, 356 U.S. 86, 101 (1958), reminds us that the Eighth Amendment prohibits punishments that are incompatible with the "evolving standards of decency that mark the progress of a maturing society."

The deliberate indifference standard applies more broadly to actions or omissions that create "a substantial risk of serious harm to an inmate." **Farmer v. Brennan**, 511 U.S. 825, 828 (1994); see **Helling v. McKinney**, 509 U.S. 25, 32-33 (1993) (holding that the deliberate indifference standard applies to unhealthy prison conditions, even if they have not caused har,); **Wilson v. Seiter**, 501 U.S. 294, 303 (1991) (holding that the deliberate indifference standard applies equally to "inhumane conditions of confinement" and inadequate medical care);**Rhodes v. Chapman**, 452 U.S. 337, 347 (1981) ("Conditions other than these in **Gamble** and **Hutto** (v.

Finney, 437 U.S. 678, 685-688 in 1978) alone or in combination ... could be cruel and unusual under the contemporary standards of decency we recognized in **Gamble**" (citation omitted). **Kane v. Winn**, 319 F.Supp.2d 162, 194 (D. Mass. 2004).

Defendants are also correct when they offer that deliberate indifference to the medical needs of inmates is sustained when a two-prong test is made. **Pryor-El v. Kelly** 892 F.Supp. 261, 272 (D.D.C. 1995).

In ¶ 2 of section 4, page 6, defendants are incorrect when they cite **Estelle**, supra, to support that "a prisoner must **allege** acts or omissions ... " to evidence deliberate indifference to serious medical needs. In the case at bar, the plaintiff has actually demonstrated sufficiently harmful acts (emphasis added).

Secondly, plaintiff must and has demonstrated that a governmental officials acted with sufficiently culpable state of mind. **Wilson**, 501 U.S. at 299.

To the point, "A medical need is serious if it is either diagnosed by a physician as mandating treatment or is so obvious that a lay person easily would recognize the necessity of a doctor's attention." **Cox v. District of Columbia**, 834 F.Supp. 439, 441 (D.D.C. 1992).

In the case at bar, the plaintiff consistantly demonstrated his need for his prescribed medications, with complaints of chest pains, anxiety attacks, as well as the ineffectiveness of defendant DR. BAUERMEISTER's substitution of Wellbutrin and Elavil. Amended Complaint, ¶¶ 19, 20, 21, 23, 24, 25. Clearly, it is reasonable to conclude the necessity for the plaintiff to see a doctor.

It appears in defendants assumption that even if the Court finds that the medical decisions by plaintiff's providers in Rhode Island did amount to cruel and unusual punishment, the plaintiff must still meet both prongs of the Eight Amendment deliberate indifference test, ¶ 2 of section 4, page 5, is both reckless and arrogant (emphasis in original).

Further, their argument hinges on the plaintiff having demonstrated the **objective** prong, the **subjective** element is lacking, which is bound to failure by the claimant. **Ibid.**

Having touched upon this issue previously in this opposition, ¶ 4, page 7; ¶¶ 1-4, page 8; ¶ 5, page 9; ¶¶ 2-4, page 12, the plaintiff shall elaborate.

Subjectively, defendants hinge on **Farmer**, 511 U.S. at 837 to make the case that defendants knew, or consciously disregarded a substantiial risk of serious harm. ¶ 2, page 5, following on page 6.

As plaintiff asserted previously, ¶¶ 2-4, page 8, both of the correctional officers, Hanley and Barney, knew or had to know of plaintiff's serious medical needs and deliberately ignored them. Defendant WALL has assumed responsibility for these acts and omissions of his subordinates.

Defendant DR. BAUERMEISTER obviously knew of plaintiff's needs as well, since he is, in fact, the trating physician. The medical record of the plaintiff is replete with such information, both in Rhode Island and Massachusetts. Yet, DR. BAUERMEISTER deliberately withheld plaintiff's medications, exposing him to such injury as only a doctor of mental impairments can fully appreciate.

Defendant POSHKUS, albeit from afar, had to know, or should have know of the plaintiff's plight, as POSHKUS is the resident administrator of Health Correctional Services (HCS) at the ACI. His inactions notwithstanding having complete access to the plaintiff's medical file, as well as the daily reports that are par usual in an institution relative to inmate medical treatment, do not exempt him from participating in deliberately ignoring the plaintiff's serious medical needs.

Defendant MAROCCO, the Associate Director of HCS of the entire RIDOC, must share in with POSHKUS as being deliberately indifferent of the plaintiff's serious medical needs. MAROCCO, more than POSHKUS, has total access to events and circumstances arising from the provision of medical care in the institution(s), knew and had to know of plaintiff's plight. Moreover, either POSHKUS or MAROCCO, in their positions of power, had every opportunity to resolve the issue of plaintiff's medications, but allowed the issue to extend without any consideration of plaintiff's health and welfare.

Defendant WALL, whose chose to shoulder the responsibility of his subordinates, had as much opportunity as the other defendants to resolve the issue of plaintiff's medications, but chose to proceed on the path taken by POSHKUS and MAROCCO, a serious lack of judgement when considering the plaintiff's health and welfare.

One must remember that there is no sound underlying distinction between right to medical care for physical ills and its psychological or psychiatric counterpart, the "deliberate

indifference" standard to be applied to constitutional adequacy of inmate medical care is equally applicable to constitutional of psychological or psychiatric care provided at a prison. **Guglielmoni v. Alexander**, 583 F.Supp. 821, 826 (D. Conn. 1984); also **Bowring v. Godwin**, 551 F.2d 44, 47 (4th Cir. 1977) (other citations omitted).

In **Ferola v. Moran**, 622 F.Supp. 814, 819-820 (D.C.R.I. 1985), whether infliction of unnecessary suffering is caused by prison doctor's response or lack thereof to inmate needs, or by prison guard's denial access to medical care, or interference to prescribed treatment, deliberate indifference to prisoner's serious illness or injury states cause of action under 42 U.S.C.A. § 1983; critical factor in any such instance, however, is that indifference be not merely inadvertent, or negligent, but deliberate, for it is only such deliberate indifference that can offend evolving standards of decency in violation of Eighth Amendment [U.S.C.A. Constit. Amend 8]; see also **Estelle**, 429 U.S. at 104-05.

Plaintiff, in the instant case, has clearly demonstrated the deliberate indifference standard to a satisfaction of the first prong of **Pryor-El**, supra.

In **Ferola**, supra, better fitted the case at bar as much as it could, **Simpson v. Penobcot County Sheriff's Dept.**, 285 F.Supp.2d 75, 82 (D. Me. 2003), provides for a comparison here (cf). Both the jail staff, nor the plaintiff, were aware of any mental health problems according to the record and thus avoided the deliberate indifference claim. Not so in the instant case.

The record is clear in the instant case as to "what" the prison custodians did, as well as "how" and "when" they did it, with intent, knowingly of their actions and aware of the plaintiff's plight. See, i.e., **Amsden**, supra.

Defendants make a point to allege that plaintiff "has presented absolutely no evidence as to the standard of care in Rhode Island as a whole, let alone evidence as to the standard of care in the correctional setting." ¶ 2, page 8.

To the allegation preceding, the plaintiff shall merely point to **Walsh v. State of Rhode Island**, U.S.D.C. D. RI, Case No. 1:06-CV-00346-ML-DLM. If this is evidence of the "standard of care" in Rhode Island institutions, we have surely regressed from the "evolving standards of decency that mark the progress of a maturing society." See, i.e., **Trop**, supra.

Another point alluded to in the defendants argument is to the allegation that plaintiff's lawsuit is based primarily on his "desire to have been prescribed certain medications: **Klonopin, Remeron,** and **Motrin**. These allegations clearly sound in medical negligence." ¶ 1, page 7. Not so, as plaintiff's memorandum of law in support of his opposition to defendants' submission of a Fed. R. Civ. P. 12(b)(6) request will attest.

**Liu v. Striuli**, 36 F.Supp.2d 452, 467 (D. R.I. 1999) said that an employer owes certain third parties a duty to protect them from harms inflicted by employer's workers. Liability for the harmful acts of employees is not premised on the doctrine of respondeat superior, but on a separate duty of an affirmative nature. **Mainella v. Staff Builders Indus. Servs., Inc.**, 608 A.2d 1141, 1144-45 (R.I. 1992). Plaintiff met the three prongs to

maintain a cause of action for negligence (as well for a civil rights action, deliberate indifference standard, both proscribed constitutionally). **Liu**, 36 F.Supp.2d at 466; **Mills v. State Sales, Inc.**, 824 A.2d 461, 467 (D. R.I. 2003).

"It is axiomatic that to tort law that this duty [owed] goes to the very existance of liability ... " See **Swajian v. General Motors Corp.**, 559 A.2d 1041, 1046 (R.I. 1989).

Therefore, under Rhode Island law, the RIDOC clearly owes the plaintiff a duty to protect him from harms inflicted by officers and staff where a custodial relationship oviates that duty in a hostile environment. Further, a breach of that duty attaches a liability that a supervisory entity bears for the actionable conduct of subordinates based on their significant relationship. See **Drake v. Star Market Co.**, 526 A.2d 517, 519 (R.I. 1987); **Bryce v. Jackson Diners Corp.**, 80 R.I. 327, 96 A.2d 637, 640 (R.I. 1953); also **Mainella**, supra; see plaintiff's memorandum of law in support of his opposition to defendants' submission of a Fed. R. Civ. P. 12(b)(6) request.

Defendants, in part primarily, shroud themselves in a defense of qualified immunity. Usually, qualified immunity turns on abstract legal questions. **Stella v. Kelley**, 63 F.3d 71, 74 (1st Cir. 1995). Review by most standards direct dismissals of complaints "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." **Hishon v. King & Spaulding**, 467 U.S. 69, 73 (1984).

Lest we forget, qualified immunity is a judge-made doctrine. The elementary justification for the doctrine is that public

officials performing discretionary functions should be free to act without fear of retribution suits for damages except when they should have understood that particulat conduct was unlawful. **Davis v. Scherer**, 468 U.S. 183, 195 (1984).

In **Harlow v. Fitzgerald**, 457 U.S. 800, 818-819 (1982), the Court said that "if the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent official should know the law governing his conduct." Otherwise, the governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constituional rights of which a reasonable person would have known. See also **Groh v. Ramirez**, 540 U.S. 551, 563-564 (2004).

It follows that an inquiry into the reasonableness of an officer's conduct must focus both on what the officer did (or failed to do) and on the state of the law at the time of the alleged act or omission. **Savard v. Rhode Island**, 338 F.3d 23, 28 (1st Cir. 2003) (en banc), cert. denied, 124 S.Ct. 1074 (2004); **Iacobucci v. Boulter**, 193 F.3d 14, 21 (1st Cir. 1999).

The unlawfulness of the defendants' conduct, all of whom were deliberately indifferent to the prisoner-plaintiff's serious medical needs, as to the case at bar, is apparent. Thus, the qualified immunity defense should not prevail. **Anderson v. Creighton**, 483 U.S. 635, 640 (1987).

Plaintiff relies upon **Wood v. Strickland**, 420 U.S. 308, 321 (1975), where the Court rationalized that the appropriate standard in the test of good faith relative to objective and subjective

is necessarily the content of both when deciding immunity. The official himself must be acting sincerely and with a belief that he is doing right, but an act violating a prisoner's constitutional rights can be no more justified by ignorance or disregard of settled, indisputable law on the part of one entrusted with custodial obligations and the daily life of his prisoner than by the presence of actual malice.

Notwithstanding defendants' DR. BAUERMESTER and his fellow defendants professing their conduct to be sincere, with a belief of doing right, they allowed the events and circumstances that proved harmful to plaintiff's health, which exacerbated the withdrawal from the Klonopin, a fact that DR. BAUERMESTER did not take into consideration. In essence, their conduct was entirely indifferent to plaintiff's medical needs and wholly unjustified.

WHEREFORE, plaintiff prays that the defendants joint motion for summary judgement be DENIED, for all the reasons stated in the within.

Respectfully submitted,

Tom Flannery

Thomas Flannery, pro se
Plaintiff
Box 1218
Shirley, MA 01464

August 29, 2007