UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THOMAS FLANNERY

v.                                          C.A. No. 06 - 399 S

DR. BAUERMEISTER, et al.

Report and Recommendation

Jacob Hagopian, Senior United States Magistrate Judge

Thomas Flannery ("Flannery" or "plaintiff"), *pro se*, filed the instant action pursuant to 42 U.S.C. § 1983 and named as defendants Dr. Bauermeister, Dr. Poshkus, Joseph Marocco, Lieutenant Hanley, Captain/Lieutenant Barney, and A.T. Wall, officials or employees at Rhode Island Department of Corrections, alleging a violation of the cruel and unusual punishment clause of the Eighth Amendment. Plaintiff also alleges a claim of medical malpractice against Drs. Poshkus and Bauermeister.

Currently before the Court are the motions of the Drs. Bauermeister and Poshkus ("defendants") for summary judgement on plaintiff's medical malpractice claim.[1] Plaintiff has objected to

---

[1] Plaintiff voluntarily dismissed Lieutenant Hanley and Captain/Lieutenant Barney from this action and the Court has recommended the dismissal of the Eighth Amendment claims against all of the defendants in a separate Report and Recommendation. Thus, plaintiff's medical malpractice is the only claim that remains.

1

the motions and thereafter filed his own motion for summary judgement. These matters have been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation. For the reasons that follow, I recommend Drs. Bauermeister and Poshkus' motions for summary judgement be granted, and plaintiff's motion for summary judgement be denied.

## Background

Unless otherwise noted, the following are the undisputed facts culled from the parties' submissions in this matter:

Thomas Flannery is a prisoner in the custody of the Massachusetts Department of Corrections ("MADOC"). On or about January 25, 2006, Flannery was transferred to the Rhode Island Department of Corrections("RIDOC"), in Cranston, Rhode Island. When he arrived at the RIDOC, plaintiff indicated to a nurse that he had been prescribed Klonopin, Remeron, and Motrin during his incarceration at the MADOC. Plaintiff also indicated that he had a prior treatment for mental health issues and had experienced panic and anxiety attacks. The nurse thereafter referred the plaintiff to the RIDOC's psychiatrist for an evaluation.

On January 30, 2006, plaintiff was seen by Dr. Bauermeister, a psychiatrist at the RIDOC. Dr. Bauermeister's notes for that examination indicate that Flannery was argumentative and demanding, and that Flannery sought the prescription drugs Klonopin and Remeron. Dr. Bauermesiter, however, refused plaintiff's request and

2

formulated his own plan of care, which included a prescription for Wellbutrin. Although disputed by Flannery, Dr. Bauermeister indicates that he advised Flannery to immediately request care if he experienced a panic or anxiety attack. Dr. Bauermeister also indicates that he instructed the nurses to provide care if Flannery presented objective panic or anxiety attack symptoms and he also instructed the nurses to verify the episode for diagnostic and treatment purposes.

Despite being provided Wellbutrin on February 1, 2006, plaintiff began to refuse to take Wellbutrin on February 8, 2006. Dr. Bauermeister thereafter examined Flannery on February 13, 2006 during which the plaintiff complained that the Wellbutrin did not help with his panic or anxiety attacks, and again sought the drugs of his choice. However, plaintiff was unable to offer a single instance of having reported a panic or anxiety attack. Dr. Bauermeister evaluated the plaintiff again on February 26, 2006.

On March 13, 2006, a social worker at the ACI visited the plaintiff. The social worker requested a consult with a psychiatrist on the plaintiff's behalf. Dr. Bauermeister evaluated the plaintiff again on March 27, 2006, and questioned the validity of plaintiff's complaints since none of which had ever been independently or objectively verified. Indeed, there is no evidence that the plaintiff ever suffered from a panic or anxiety attack.

Dr. Bauermeister again evaluated the plaintiff on March 28,

2006. At that time, Dr. Bauermesiter discontinued the use of Wellbutrin and instead prescribed Elavil. Shortly thereafter, plaintiff returned to the MADOC.

Thus, between January 25, 2006 and April 2006, while Flannery was incarcerated at the RIDOC, he was seen on at least five times by Dr. Bauermeister and once by a social worker. Br. Bauermeister treated the plaintiff and provided him with prescriptions for Wellbutrin and later Elavil.

Defendants' expert witnesses indicate that Dr. Bauermeister's care of Flannery met or exceeded the applicable standards of care. Defendants' experts note that it is known within the correctional medical community that some inmates seek the prescriptions Klonopin and Remeron not for their proper medical indications, but rather for their common side effects, which make patients less aware of their surroundings. Plaintiff has failed to proffer an expert witness who will testify on his behalf. Both the plaintiff and the defendants have moved for summary judgement.

## Analysis

A. **Summary Judgment Standard**

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment can only be granted when "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Rule 56 has a distinctive set of steps. When requesting summary judgment, the moving party must "put the ball in play, averring 'an absence of evidence to support a nonmoving party's case.'" Garside, 895 F.2d at 48 (quoting Celotex v. Catrett, 477 U.S. 317, 325 (1986)). The nonmovant then must document some factual disagreement sufficient to deflect brevis disposition. Not every discrepancy in the proof is enough to forestall summary judgment; the disagreement must relate to some issue of material fact. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-248 (1986).

On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. See id. at 256-257. This evidence "can not be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989). Evidence that is merely colorable or is not significantly probative cannot deter summary judgment. Anderson, 477 U.S. at 256-257.

**B. Medical Malpractice Claim**

Plaintiff has lodged a medical malpractice claim against Dr.

Bauermeister and Dr. Poshkus. In medical malpractice actions, the plaintiff must establish the appropriate standard of care and a deviation therefrom by presenting competent medical expert testimony. Wilkenson v. Vesey, 295 A.2d 676, 682 (R.I. 1972). The expert "must measure the care that was administered against the degree of care and skill ordinarily employed in like cases." Richardson v. Fuchs, 523 A.2d 445, 448 (R.I. 1987)(citations omitted). The expert must explain "what proper procedures and alternatives are available to a physician ... [and] why the procedures followed by the defendant physician were negligent, and not legitimate alternatives." Sousa v. Chaset, 519 A.2d 1132, 1135 (R.I. 1987).

Here, plaintiff has failed to identify an expert to testify on his behalf, and failed to otherwise demonstrate that he possesses any evidence of the appropriate standard of care, any evidence indicating a deviation from the standard of care, or any evidence demonstrating causation to any injury. Schenck v. Roger Williams General Hospital, 382 A.2d 514, 516 (R.I. 1977); Boccasile v. Cajun Music Limited, 694 A.2d 686, 690 (R.I. 1997). Indeed, plaintiff has failed to identify any cognizable injury. Without demonstrating that he possesses such evidence, plaintiff's medical malpractice claim cannot go forward. The undisputed facts indicate that plaintiff received the appropriate level of care while incarcerated in Rhode Island.

## Conclusion

Accordingly, for the reasons stated above, I recommend that the defendants' motions for summary judgement be granted on plaintiff's medical malpractice claim, and plaintiff's motion for summary judgement be denied.[2] Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten days of its receipt. Fed R. Civ. P. 72(b); LR Cv 72(d). Failure to filed timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986) (per curiam); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

_____
Jacob Hagopian
Senior United States Magistrate Judge
Date: 12-11-07

---

[2] To the extent that plaintiff may be seeking summary judgement on his Eighth Amendment claims, plaintiff's motion is moot since this Court found that plaintiff failed to state a claim in an earlier issued Report and Recommendation. Specifically, plaintiff failed to allege that he suffered from a serious medical need, or that the defendants had a culpable state of mind.