UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THOMAS FLANNERY | ) | |
| Plaintiff | ) | |
| v. | ) | CIVIL ACTION NO. 06-399S |
| DR. BAUERMEISTER et al | ) | |
| Defendants | ) | |

MOTION FOR RECONSIDERATION

The plaintiff respectfully moves this Court to reconsider its determinations of granting defendants' entry of summary judgement, while denying plaintiff's opposition and motion for same. For purposes of clarification, the plaintiff shall refer to the Court's judgements as "A" and "B," the former relating to defendants DR. BAUERMEISTER, POSHKUS motions for summary judgement, the latter relative to defendants DR. BAUERMEISTER, POSHKUS, MAROCCO and WALL motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

As reasons therefore, the plaintiff reiterates the following decisive facts gleaned from his own pleadings, primarily his Opposition To Defendants' "Undisputed Facts" and Their Motion For Summary Judgement, as well his Amended Complaint:

1. In Judge-Magistrate's (Hagopian, M.J.) Report and Recommendation A per page 1, ¶ 1 and ¶ 2 n. 1, the plaintiff asserts that he has never claimed "medical practice" against the defendants DR. BAUERMEISTER and POSHKUS. In fact, his claim was and is one of medical negligence.

2. In the Magistrate's B Report and Recommendation, page 1, ¶ 1, another assumption is made to plaintiff alleging a claim of "medical malpractice." Plaintiff challenges defendants to produce evidence of said claim where the trier of fact is steadfast in his assumption, which is erroneous.

3. Also in the B Report, page 2, ¶¶ 2 and 3, as well in page 3 , ¶ 1, the plaintiff is said to have "alleged" informing the intake nurse of his prescribed medications of Klonopin and Remeron. Further, that he sought the "allegedly prescribed" medications, while "alleging" he was restored to both upon his return to Massachusetts custody. To the contrary, the plaintiff clearly demonstrated, by probative evidence attached to his pleadings, a true copy of the medical screen performed upon his arrival to Rhode Island custody that stated he is taking "Klonopin 0.5mg BID and Remeron 60mg q.HS," as well as Motrin of 800mg. Plaintiff's Amended Complaint, FACTS, ¶ 13. Further, it is said that plaintiff "alleges" restoration once returned to Massachusetts. Here too, the assumption is without merit when plaintiff has probative evidence in his possession of said restoration to his prescribed medications, as well that neither defendants, to whom were entrusted with his care and custody, nor the trier of fact, ever bothered to properly investigate this and other medical matters, accomplished by a simple phone call or fax.

4. In the Magistrate's B Report and Recommendation, page 4, ¶ 1, the trier of fact cites **United States v. AVX Corp.**, 962 F.2d 108, 115 (1st Cir. 1992) to buoy his assertion that

"unverifiable conclusions, not supported by the stated facts, deserve no deference," a direct swipe at plaintiff's pleadings. Further, the trier of fact asserts that in ruling on the motion to dismiss [Fed. R. Civ. 12(b)(6)], "the pertinent inquiry is whether plaintiff's complaint sets forth sufficient factual allegations which, if proven, would support his claims of a deprivation of federal rights."

The plaintiff would inquire of the trier of fact if he has, indeed, read plaintiff's Amended Complaint to have justified his comments in the preceding. It has, without doubt to plaintiff, revealed a bias, allegedly, toward him, as well as prisoners generally. Moreover, the plaintiff reiterated his belief that the District of Rhode Island's handling of prisoner case is abysmally poor.

5. Again in the Magistrate's B Report, page 5, ¶ 1, the Court concludes that " ... defendants assert that the facts alleged fail to rise to the level of a violation of the Eighth Amendment. I agree." In the following, ¶ 2, the Magistrate cites **Whitley v. Albers**, 475 U.S. 312, 318-19 (1986), no doubt to support his belief that "It is obduracy and wantonness, not inadvertent or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause ... "

Inadvertence or error in good faith, indeed. The Magistrate cannot deny that plaintiff alluded to, in fact so stated in his opposition motion, as well his amended complaint, that defendant DR. BAUERMEISTER "misses an opportunity to resolve the issue of medications by simply placing a call, or FAX, to Massachusetts

authorities to confirm plaintiff's requests." Opposition, page 3, ¶ 3.

Was it "inadvertence or error in good faith ... " that did prompt defendants' conduct? Clearly, these are medical doctors, nurses and physician's assistance that saw fit to deny the plaintiff his prescribed medications. It cannot be gainsaid that the Klonopin , Remeron and Motrin were duly prescribed by other, competent, medical professionals at plaintiff's place of confinement less than 100 miles away in a neighboring state. Not one attempt, to plaintiff's knowledge, has ever been made to resolve this issue by communicating with these competent, medical professionals. Obviously, plaintiff's medical history was of no concern and defendants deliberately ignored this fact with their indifference, truly an elitist stance.

Worse, the defendants knew, or should have known, that the withdrawal of Klonopin especially, its pharmacological profile similar to other anxiolytic/sedative benzodiazepines, when done arbitrarily or suddenly, is life-threatening. See **EXHIBIT A.**, Psych Drug Truth Klonopin, 16 pages, downloaded http://www. psychdrugtruth.com/klonopin.htm.

And in another warning on withdrawal from many psychiatric drugs, the reknown and revered expert of psychiatry, Dr. Peter Breggin, issues a standard red flag on its dangerousness. He consistantly cautions that withdrawal from such drugs should be done under clinical supervision. To state, as defendants do, that plaintiff's discontinuance of his prescribed medications were "clinically supervised," is a stretch of truth at best.

See **EXHIBIT B.**, Withdrawal Reactions from Benzodiazepines by Dr. Breggin and Review of Behavioral Effect of Benzodiazepines also by Dr. Breggin.

Just as the Magistrate states in his B Report, page 6, ¶ 1, the Eighth Amendment violation must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. **Estelle v. Gamble**, 429 U.S. 97, 106 (1976).

A showing of deliberate indifference must include that a physician was negligent in diagnosing or trating the patient. **Id.** Further, officials must intentionally delay or completely deny access to medical care. **Id.**, at 104-05.

No doubt here that plaintiff has alleged actions, or inactions, absolutely harmful when considering the life-threatening effects of withdrawing from his prescribed medications of Klonopin and Remeron, which evidenced a standard of deliberate indifference.

No doubt either that defendants DR. BAUERMEISTER was clearly negligent when he denied a prisoner-patient in his care and custody his prescribed medications when knowingly of the withdrawal aspect of said medications. This is a denial of access to the proper medical care plaintiff is entitled to.

As to the plaintiff's medical "needs," which objective prong looks to its "seriousness," it is abundantly clear that a medical professional determined as such in Massachusetts. It is also clear that defendants ignored such diagnosis and one that even a "lay person" would not overlook.

Subjectively, it was and is an element "of a culpable state of mind," perhaps even reckless disregard rising to such conduct

on the part of defendant(s), while failing to alleviate the "significant risk" they should have, or knew of, would befall a person withdrawing from the drusg prescribed for the person in their care and custody. **Farmer v. Brennan**, 511 U.S. 825 (1994).

The Magistrate, in Report B, page 7, ¶ 2, asserts that the plaintiff did not allege facts that would support an Eighth Amendment claim of deliberate Indifference. He points to the Amended Complaint by plaintiff where there exists no specifics as to medical need, nor to the "identified" prescription medications. Moreover, in ¶ 3, he states that plaintiff failed to allege a serious medical need and that defendants were aware of a serious risk of substantial harm. **Farmer**, 511 at 826.

Here too, the Magistrate relies exclusively upon defendant DR. BAUERMEISTER's statements and allegations. To credit the plaintiff's Amended Complaint, FACTS, ¶¶ 12 through 25, as well his Opposition and Summary Judgement Motion, **entierte**, is to refute the claim that defendant DR. BAUERMEISTER simply did not acquiese to plaintiff's legitimate request for his prescribed medication, but placed him on "prescribed medication." It is revealing that the Magistrate chose the word "prescribed" here, when in fact, the alternate given to plaintiff was not Klonopin or Remerol, prescription he previously was prescribed during a an incident past. And to now prescribe Wellbutrin, 100mg., is to have a knowledge of plaintiff's general condition, as well his previous medical history notwithstanding defendants' refusal to communicate with Massachusetts medical officials. Plaintiff voiced his objection to the Wellbutrin, expressing

his prior experinece that he did not fare well on the drug. In other words, defendant DR. BAUERMEISTER's "treatment" is at least negligent when exercising caution as to his patient's concern relative to his past experience.

To state that plaintiff was "merely unhappy" with the course of treatment provided him, is a gross understatement and runs contrary to facts averred to, but not credited, by the Magistrate.

Plaintiif, in response to the Magistrate's comments in Report B, page 8, ¶ 3, asserts that he has repeatedly stated that he has not, does not, rely on a theory of respondeat superior.

Defendants WALL, MAROCCO and POSHKUS, are actionable in this complaint as a result of their own actions, as well cognizable in a 42 U.S.C. ¶ 1983 action, partucularly for said actions or inactions knowingly done in violation of law, with intent and malice toward the defendant.

Finally, in page 9, ¶ 1, Report B, the Magistrate does lend a modicum of credit to plaintiff's assertion that he did, in fact, exaust his remedies where and when applicable or truly available. Further to this argument, which is relative to the Prison Litigation Reform Act (PLRA), **Jones v. Bock**, 127 S.Ct. 910, decided January 22, 2007, an interim decision available to this plaintiff-prisoner at this time, has the last word. Said exaustion is reinterpreted and modified where determined by this Court.

To the extent that the Magistrate's Report A is nearly duplicative of Report B, the plaintiff opts to deny he has claimed medical malpractice in this matter against defendants and as delineated in his opposition herein, as well to assert that he has, as a matter of fact, stated a viable claim in his Amended Complaint, supported by his pleadings in toto.

Plaintiff's objection to the Magistrate's ORDER pursusant to Fed. R. Civ. P. 72(b); LR Cv 72(d), has been previous and timely filed and lays before the Court.

Respectfully submitted,

Thomas Flannery, pro se
Plaintiff
Box 1218 - SMU 2-28
Shirley, MA 01464

January 6, 2008

CERTIFICATE OF SERVICE

I certify that I have served a true copy of my motion for reconsideration, with exhibits, to defendants' counsel: Jay Elias, Esq.; John Moretta, Esq.; Michael Grant, via first class mail/postage-paid, by depositing same in the mail drop provided by this institution.

Thomas Flannery, pro se

January 6, 2008